## Commonwealth *versus* Campbell.

A manufacturer or mechanic is not required to take out a license, under the 11th section of the Act of 22d April 1846, unless he keep a store or warehouse, away from his manufactory, for sale of the wares in the manufacture of which he is concerned or interested.

That act requires all merchants and dealers to take out an annual license, but does not embrace manufacturers and mechanics, unless they keep a store for the sale of their wares.

Berks County *v.* Bertolet, 1 *Harris* 522, overruled.

ERROR to the Common Pleas of *Perry county.*

This was an appeal by John Campbell to the Court of Common Pleas from the decision of the Mercantile Appraiser of Perry county, in which the following facts were agreed upon, in the nature of a special verdict, on which the court was to enter judgment for the Commonwealth for $7 and costs, if the law be with the plaintiff, otherwise judgment for the defendant :—

" The defendant is the owner of a tan-yard in Perry county. He buys hides in the city of Philadelphia and elsewhere, brings them to his said tan-yard, and manufactures them into leather by the usual process of tanning; supplies shoemakers and others, at home, at his yard; sends leather so manufactured to the cities of Philadelphia and Baltimore, and sells to commission leather merchants; and consigns the same to said merchants, who sell it on commission, at so much per cent., or on a per centage. Defendant keeps no warehouse at his said tan-yard, nor keeps nor owns a warehouse, shop, or store, in Philadelphia or Baltimore. Under these facts, the Commonwealth claims the tax, under the Act of Assembly in such case made and provided."

The court below gave judgment for the defendant, and the following opinion was delivered by GRAHAM, P. J.:—

" The defendant, John Campbell, owns a tan-yard in Bloomfield, Perry county. He buys hides in the city of Philadelphia and elsewhere, and has them manufactured into leather, by the usual process of tanning, at his tannery. He sells leather to shoemakers and others at his said tannery, and sends it to Philadelphia and Baltimore, and sells to commission leather merchants, and also consigns the same to said merchants, who sell on commission for a per centage on the sales. The defendant keeps no warehouse, shop, or store, at Philadelphia or Baltimore.

" The question submitted is, whether the defendant is liable to pay a mercantile tax under the 11th section of the Act of the 22d of April 1846? This section subjects all dealers in goods, wares, and merchandise, the growth, product, and manufacture of the United States, and any person who shall keep a warehouse

or store, for the purpose of vending and disposing of such goods, wares, and merchandise, where such person is concerned or interested in their manufacture, to an annual tax or license fee; but exempts from such tax those who keep a store or warehouse, at their own shop or manufactory, for the purpose of vending their own manufactures exclusively. The counsel for the Commonwealth contend that this case is ruled by the case of Berks County v. Bertolet, 1 *Harris* 522, in which it was held, that a miller who manufactured grain into flour, and then sold the flour to his customers at the mill, and at Reading and other places, where he sent it by his teams, was liable to pay a mercantile tax. If this case stood alone, and its authority unimpaired by a more recent decision, it might be considered presumptuous in us to decide differently in the present case; for we admit it is difficult to distinguish between them. But the force and authority of Berks County v. Bertolet is certainly impaired, if it is not directly overruled by the subsequent case of Norris Brothers v. Commonwealth, 3 *Casey* 495. Both are decided upon the meaning of the word 'dealer.' In the former case, Judge ROGERS, in defining the term 'dealer,' says:—'A dealer is one who trades, buys, or sells. If so, Bertolet is a dealer; for, according to the case stated, he both buys and sells. He buys the grain, and, when manufactured, sells the flour. It is true, he does not buy the flour; but he buys the materials of which it is composed, and this brings him within the spirit of the act. He is a dealer to all intents and purposes.'

" Such is the definition of a dealer given by Judge ROGERS, and the reasoning by which he arrives at the conclusion that a miller who makes flour from wheat, and sells it, must pay a mercantile tax. Now, if we turn to the case of Norris Brothers, very extensively engaged in the manufacture and sale of engines out of wood and iron, and who did not even make their own tire, but purchased it, with flanges, made suitable for their purpose,—the question being presented whether they were dealers within the meaning of the statute, so as to be liable to a mercantile tax, the court decided they were not; although they certainly came within Judge ROGERS's definition of a dealer, for they both buy and sell. Judge BLACK, who delivered the opinion of the court in the last case, says:—'A dealer, in the popular, and, therefore, in the statutory sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again. He stands immediately between the producer and consumer, and depends for his profit, not upon the labor he bestows on his commodities, but upon the skill and foresight with which he watches the markets. A man who makes locomotives is a mechanic.' 'But what is manufacturing? It is making. To make, in the mechanical sense, does not signify to create out of nothing; for that surpasses all

human power. It does not mean the production of a new article out of materials entirely raw. It generally consists in giving new shape, new qualities, or new combinations, to matter which has already gone through some other artificial process.' 'A shoe-maker is none the less a manufacturer of shoes, because he does not also tan the leather.' And to meet this case it was only necessary to pursue this chain of reasoning one step further, and say the tanner was none the less a manufacturer of leather, because he does not breed and raise the bullocks from which the raw hides were taken. A tanner comes most particularly within Judge BLACK'S definition of what a mechanic or manufacturer is, and what is not, a dealer. He makes leather to sell; but does not buy hides to sell again. He produces the article of leather, and depends for his profit upon the labour he bestows upon the raw material.

"We adopt the latter case, not only because it is more recent, and, like the last clause in a will, overrules all former conflicting cases, but, also, to our apprehension, the reasoning of the court is more logical, satisfactory, and convincing, and will better promote the object and design of the legislature. The design was not to tax the labour of the mechanic and skill of the artist, which would be the direct tendency of the act, where the profits arise from the labour and skill bestowed upon the material. A tanner purchases $500 worth of raw hides, and by the purchase of bark and other ingredients, and the application of his skill and labour, converts the raw material into leather worth $1000. If he is taxed, it is his labour and skill upon which the tax is imposed, for he is not a dealer who buys to sell again the same article, and who makes his profit by his skill and foresight in watching the market. As well may you tax as a dealer the sculptor or painter, who, by his skill and labour, imparts to the almost valueless marble or canvas a value greatly exceeding that required to subject a dealer to the tax sought to be imposed in this case.

"If the defendant is not a dealer in the statutory sense of the term, he does not come within the provisions of the act, for the only other case mentioned is a person who shall keep a store or warehouse for the purpose of disposing of goods, wares, and mer-chandise, except mechanics who keep a store or warehouse at their own shop or manufactory. The case finds that the defend-ant sells leather at his tannery, and sends it to commission merchants in Philadelphia and Baltimore, but not that he keeps a store or warehouse at his manufactory or elsewhere. If he is not a dealer, but a manufacturer, his trade or business of a tanner or manufacturer of leather is not subject to the tax imposed by the Act of 1846."

To reverse this judgment, the present writ of error was sued

[Commonwealth *v.* Campbell.]

out by the attorney-general, on behalf of the Commonwealth, and the same was here assigned for error.

*Knox*, Attorney-General, for the Commonwealth.—This tax is sought to be imposed upon the defendant under the 11th section of the Act of April 22d 1846. There are two descriptions of persons subjected to the tax in the above section. First, *dealers* in certain goods, wares, and merchandise. Secondly, *persons concerned* or *interested* in the *manufacture* of such goods, who *keep* a *store* or *warehouse* for the *purpose* of *vending* or *disposing* of them.

Without here inquiring whether or how far these two descriptions embrace the same persons, is the defendant included in either of them? It is thought that he is a dealer. His being chiefly a manufacturer does not prevent him from being also a dealer. If a man confines himself to "making to order," and habitually only selling thus, he would be solely a manufacturer; but when he habitually vends his manufactures, either by peddling them around the country, or from a permanent place of sale, he becomes to that extent also a dealer in his own manufactures, follows an occupation other than that of a manufacturer, encroaches upon the business of those who are solely dealers, interferes with their sales, and should, and was intended by the legislature, to be subject to the same tax. The method by which a man comes by his goods constitutes no essential part of the definition of a dealer. He may, besides buying, either make, find, procure by gift, or steal them, if he likes; but if, after getting possession, he habitually disposes of them as dealers usually do, he is a dealer.

But, granting that he is not a dealer, he comes in spirit and meaning, if not in letter, under the second description of persons taxed. He is *concerned* and *interested* in the manufacture of leather, and *vends* and *disposes* of the same. Thus far is not disputed. But does he keep a store or warehouse for the sale of it? The defendant sells it at his yard, sends it to, and sells it at Philadelphia, &c., and consigns it to commission merchants at Philadelphia, who sell it for him. Is not the yard, or bark-house, or shop in which he has it, when he sells it at home, his store or warehouse for the time? Is not the car or warehouse, from which he sells it at Philadelphia, or the store of the merchant, to whom he consigns it at Philadelphia, and from which he sells it, to be considered his store or warehouse?

If the defendant is included in either of the above descriptions of persons, he is to be taxed. The ground will not be taken that he is a mechanic who confines his sales of his own manufactures to his shop or manufactory, and therefore comes within the proviso of the act; for, granting that he is a mechanic, which is by no

means clear, the case stated concedes that he sells elsewhere, viz., at Philadelphia and Baltimore.

The case of Berks County *v.* Bertolet, 1 *Harris* 522, rules this case. There the man sought to be taxed was a manufacturer of flour—here he is a manufacturer of leather. There he sold at his mill, and sent to, and sold at Reading. Here he sells at his yard, and sends to, and sells at Philadelphia, &c. The only difference is, that here he also sends to commission merchants in Philadelphia who sell for him.

The court below says that Norris Brothers *v.* The Commonwealth, 3 *Casey* 495, impairs, if not overrules, Berks County *v.* Bertolet. But in Norris Brothers *v.* The Commonwealth, the plaintiffs in error were clearly within the proviso of the act, being strictly mechanics in every sense of the word, making their engines only to order, and confining the sale of them exclusively to their own shop or manufactory; and the learned judge, who writes the opinion of the Supreme Court in Norris Brothers *v.* The Commonwealth, thinks and says that it does not.

*Junkin*, for the defendant in error.—The following propositions are self-evident: 1. That a tanner, or manufacturer of leather, is not a dealer. 2. That the defendant is a manufacturer. He buys hides, and by a skillful application of bark, &c., he produces an article of leather. Then the defendant, if liable, must be so under the clause—"*persons concerned* or *interested* in the manufacture of such goods: who keep a *store*, or *warehouse*, for the *purpose of vending* or *disposing* of them." This expression is significant. Just such words are used to express the interest of a partner, or owner of stock in a joint company. These words are never used, when speaking of a sole owner.

The object was, to reach the case of a person, who might have an interest, to the extent of but $10, in a factory, and who would escape the tax under that plea. But did the legislature mean that where a man was sole owner, and a workman in a mechanic art, that he should pay this license because he sent the manufactured article abroad to commission merchants, or wherever the demand existed for his products? Then a farmer should pay. He raises grain, and sends to commission merchants to sell for him. A man who owns a saw-mill, must confine his sales to the mill-yard. If he load a wagon and sell in a town, he must pay. If a broom maker in the woods go to a populous neighbourhood to sell his products, he must pay. In short, whether a man must pay, who manufactures, depends on whether he is a dealer, with warehouse and stock in trade, regularly in competition with a dealer in the same article, who does not manufacture.

The store or warehouse of the commission merchant is not, nor

[Commonwealth *v.* Campbell.]

can it be considered, the warehouse or store of the consignor. The commission merchant pays that license. A woman manufactures butter, carries it to a store, and sells; must she pay license because she vends away from her dairy? An artist buys his canvas, paints a picture, leaves it at an auction room, where it is sold on commission; must he take out a license? The solution is plain. When a manufacturer sets up a store to deal and trade in his own products, as a middleman, who, instead of buying from the manufacturer, as middlemen generally do, chooses to manufacture his own supplies and stock, then *he is a dealer,* and must pay.

The opinion of the court was delivered by

Lowrie, C. J.—In endeavouring to ascertain the classes who are taxable by the mercantile appraisers, we find them described in the Act of 1830 by the terms, "every person who shall deal in selling goods and merchandise;" but it applies only to foreign goods. The Act of 1841 gives much the same description of the class, using the terms, "all persons engaged in selling," &c.; and it applies to domestic as well as foreign goods, but with a different scale of taxation for each. It also calls them "dealers," and describes them as persons who make "purchases and sales:" § 10, *P. L.* 311. The Act of 1845, §§ 5, 6, 8, also calls them "dealers."

Now it seems to us quite clear, that all these modes of expression are merely different forms of describing the class called merchants and shopkeepers, and that it does not include manufacturers or mechanics who sell only their own manufactures. This becomes still more clear when we refer to the Act of 1846; for it changes the rate by putting dealers in foreign and in domestic goods on the same footing, and by making manufacturers taxable in certain cases.

Every manufacturer must sell his wares; but he is not, therefore, classed as a "dealer" in them, under the Act of 1846. That law distinguishes between dealers and manufacturers; and, therefore, we must do so. A manufacturer or mechanic is taxed for selling his wares, only when he keeps a store or warehouse away from his manufactory, in which he sells the wares, in the manufacture of which he is "concerned or interested"—that is, as whole or part owner.

The defendant is a tanner, and sends his leather to Baltimore, and sells it there. That is not a selling within the state, and, therefore, is not a ground of taxation here. He sends some to commission merchants to sell for him. For that he is not taxable, because the commission merchant is the seller, and pays the tax as such. His sales at his tan-yard are plainly not a ground of taxation.

Vol. IX.—25

But he also sends leather to Philadelphia, and sells it there, though without keeping a store there; and according to the decision in Berks County *v.* Bertolet, 13 *State Rep.* 522, this makes him taxable as a seller of merchandise. In that decision we think that the law was misunderstood; for it confounds the distinction between dealers and manufacturers, which is clearly marked in the law. Dealers are the middlemen between the manufacturer or the producer and the consumer; and they are made taxable under all the laws we have referred to. Manufacturers were made taxable, as sellers of merchandise, by the Act of 1846, if they keep a store, away from their manufactory, for the sale of their goods. The mode in which the defendant sells his leather does not bring him within the act, and therefore he is not taxable by the mercantile appraisers.

Judgment affirmed.