## Commonwealth, Appellant, *v.* Williamson.

*Taxation—Mercantile license tax—Dealer—Act of May 2, 1899, P. L. 184.*

Where a person takes ordinary city water, subjects it to processes which involve the use of a large and expensive plant, converts it into steam so as to eliminate all impurities and vegetable gases, and then reconverts the steam into water and bottles and sells it from his plant, without the intervention of any store or warehouse apart from the plant, such a person cannot be assessed for a mercantile license tax as a vendor or dealer under the Act of May 2, 1899, P. L. 184.

Argued Oct. 13, 1911. Appeal, No. 169, Oct. T., 1911, by plaintiff, from judgment of C. P. No. 5, Phila. Co., June T., 1911, No. 771, for defendant on case stated in suit of Commonwealth v. William W. Williamson, trading as Purock Water Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Case stated to determine liability for mercantile license tax.

The opinion of the Superior Court states the case.

*Error assigned* was in entering judgment for defendant on case stated.

*Murdoch Kendrick*, with him *Joseph Tunney*, for appellant.—The distillation of ordinary filtered natural water by a mechanical process for the purpose of vending the

same is not "manufacture" such as to exempt the defendant as a manufacturer from the payment of a mercantile license tax: Hartranft v. Wiegmann, 121 U. S. 609 (7 Sup. Ct. Repr. 1240); People v. Knickerbocker Ice Co., 99 N. Y. 181; Norris v. Com., 27 Pa. 494; Dudley v. Aqueduct Corporation, 100 Mass. 183; Hittinger v. Westford, 135 Mass. 258; Com. v. Electric Light & Power Co., 145 Pa. 105; Com. v. Arrott Mills Co., 145 Pa. 69.

*T. R. White,* for appellee.—One who manufactures an article and sells it at the place of manufacture is not liable to a mercantile license tax: Com. v. Gillinder, 12 Pa. Dist. Rep. 635; New Mercantile Tax Law, 9 Pa. Dist. Rep. 117; Com. v. Thomas Potter, Sons & Co., 159 Pa. 583.

It seems to us almost beyond reasonable argument that Purock Water, when finally produced as described, is a different article from city water, and is in fact a manufactured product: Com v. Juniata Coke Co., 157 Pa. 507; Com. v. Electric Light, Heat & Power Co., 193 Pa. 245; Com. v. Gormly, 173 Pa. 586; Com. v. Keystone Bridge Co., 156 Pa. 500; State v. American Sugar Refining Co., 108 La. 603 (32 So. Repr. 965); Schriefer v. Wood, 21 Fed. Cases, 737, Case No. 12,481; People v. Ice Co., 99 N. Y. 181.

OPINION BY PORTER, J., March 1, 1912:

The Board of Mercantile Appraisers having assessed a mercantile license tax against the defendant, as a "retail vendor of, or dealer in, goods, wares and merchandise;" under the supposed authority of the Act of May 2, 1899, P. L. 184, the defendant appealed from that assessment to the court below. The parties agreed upon the facts as to the character of the business carried on by the defendant, in a case stated, which will appear in the report of our decision and need not be recited at length in this opinion. The court below entered judgment in favor of the defendant, and the commonwealth appeals.

The defendant maintains, as is agreed upon in the case

stated, "a large and expensive plant for producing a pure water for household consumption, which is manufactured or produced in the following described manner and is sold under the trade name Purock Water." The process by which the water is purified is set forth at length and in detail in the case stated, and may be thus briefly summarized. Ordinary city filtered water is introduced into a boiler and by the application of heat is transformed into steam, from the boiler the steam passes into a still, which consists of coils of pipe within a metal shell, the pipe being surrounded by circulating water; the steam is condensed in the still and the resulting water is passed through a cell of granulated charcoal and from thence into a glass lined tank. Before entering the tank the water is mingled with air piped from outside of the building and passed through a filter of absorbent cotton, to purify it. From the glass tank the water passes through a block tin pipe into a filling machine where it is automatically bottled. When the water is converted into steam, all impurities less volatile than water are left behind, in the boiler. In the process of distillation all the vegetable gases which may have been combined with the water in its original state are eliminated by a careful adjustment of pressure in the still, and the water when bottled is free from any contaminating matter. All orders for the water are taken at the factory and all deliveries made from there. No store or warehouse of any kind is maintained, other than the building where the water is produced as above stated.

The question to be determined is whether this appellee is a "dealer" within the meaning of the statute, and so liable to be taxed on his business. The meaning of the term "dealer," when used in statutes of this character, had been judicially determined prior to the act of May 2, 1899, and the word must be assumed to have been used in the sense in which it had been interpreted by the court of last resort, in construing earlier legislation: Com. v. Thomas Potter, Sons & Co., 159 Pa. 583; Com. v. Bailey, Banks &

Biddle Co., 20 Pa. Superior Ct. 210; Com. v. Pocono Mountain Ice Co., 23 Pa. Superior Ct. 267; Com. v. Gormly, 173 Pa. 586. In the case last cited the language of BLACK, J., in Norris v. Com., 27 Pa. 494, was quoted with approval: "The meaning of the statute is perfectly clear. The legislature understood the words it was using. A tax was laid upon dealers, that is, those who should buy to sell. This, of course, did not include persons who sold the wares manufactured by themselves. Dealers, therefore, might evade the tax by having an interest in the factory. To prevent this the second clause was added taxing the manufacturers themselves whenever the goods manufactured were sold at a store separate from the work-shop, but by express words exempting them in all other cases." We deem it pertinent also to quote from the opinion of Mr. Justice BLACK the following: "A dealer, in the popular, and therefore, in the statutory sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again. He stands intermediately between the producer and the consumer, and depends for his profit, not upon the labor he bestows on his commodity, but upon the skill and foresight with which he watches the market." Applying these principles to the facts agreed upon in this case we must hold that this defendant is not a "dealer" within the meaning of the statute. He does not even buy the water which he uses in his business, but assuming that he does pay the city for it, that which he sells is not the same thing which he buys. The learned counsel representing the commonwealth contends that the substance which the defendant sells is only water, that he buys water and as he adds no new element to the water, he simply buys what he sells, and is, therefore, a "dealer." This line of argument leaves out of consideration entirely the facts agreed upon, that the ordinary city water is subjected to processes which involve the use of a large and expensive plant, which in the process of purification entirely changes the form of the substance, converting the water into a vapor, so dealing with that vapor as to

eliminate all impurities and all vegetable gases and then reconverting the steam into water, which when bottled is "free from any contaminating matter." Ordinary water is taken from the well, the spring or the stream; distilled water is the product of the still; just as the ox is the product of the farm while beef is the product of the shambles. The defendant depends for his profit upon his labor, skill and care in the use of proper appliances in the preparation of a product which shall be free from the suspicion of impurity and safe for household consumption; it cannot be said that he is in any sense dependent on the fluctuation of the market price of the water which he procures from the city. Let it be granted that the appellee adds no element to the water which it did not originally contain, yet the fact remains that it is agreed that the process to which he subjects the liquid which he gets from the city separates the pure water in the compound from all substances less volatile than water and from all vegetable gases and that the product which he obtains and sells is a water free from contaminating matter. He buys a compound, by the use of expensive and complicated machinery extracts the pure water from the compound, and sells the water. The process employed by the defendant separates the pure water from other substances with which it is combined, just as in smelting the metals are obtained from the ores in which they are found combined with other materials.

The judgment is affirmed.