## Commonwealth *v.* Lowry-Rodgers Co., Appellant.

*Taxation—Mercantile tax—Dealer—Mechanics—Manufacturing —Roasted coffee bean—Exemption—Statutes—Construction of — Acts of April 22, 1846, P. L. 486, and February 27, 1868, P. L. 43.*

1. Under the mercantile tax laws, a dealer is not one who buys to keep or makes to sell, but one who buys to sell again.

2. The purposes of the declaratory Act of February 27, 1868, P. L. 43, are to resolve the difficulty regarding the apparent limitation of the exemption in section 11 of the Act of April 22, 1846, P. L. 486, 489, to mechanics only, and to make clear the intention to assess the tax upon manufacturers and mechanics, when they sell elsewhere than at their manufactories or workshops.

3. The word manufacturing, as used in the mercantile tax laws, means making in the mechanical sense.

4. Venders and dealers may be liable to a mercantile tax, even though, before sale, they change the form and condition of the articles they purchase.

5. One who sells a quantity of a natural product, which he has simply exposed to heat, and thereby cleaned and effected a chemical change in it, is liable to a mercantile tax thereon, even though there also occurs an incidental change in the size, form and weight of the product.

6. Decisions construing the acts relating to the state tax on manufacturing corporations, are not conclusive in the interpretation of the mercantile tax laws.

7. Statutes relieving from taxation must be strictly construed.

Argued January 10, 1924. Appeal, No. 38, Jan. T., 1924, by defendant, from judgment of C. P. No. 1, Phila. Co., June T., 1922, No. 8785, on appeal from mercantile tax assessment, in case of Commonwealth v. Lowry-Rodgers Company. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Affirmed.

Appeal from mercantile tax assessment.
The opinion of the Supreme Court states the facts.
Appeal sustained in part. Defendant appealed.

*Error assigned* was judgment.

*David Wallerstein,* for appellant.—The production of roasted coffee bean is a manufacturing process: Norris v. Com., 27 Pa. 494; Com. v. Light Co., 145 Pa. 105; Com. v. Quaker City Dye Works, 5 Pa. C. C. R. 94; Com. v. Dyer Quarry Co., 250 Pa. 589; Com. v. Williamson, 48 Pa. Superior Ct. 561.

Processes held not to be manufacturing are referred to in Com. v. Beef Co., 242 Pa. 163; Hartranft v. Wiegman, 121 U. S. 609.

*J. Louis Breitinger,* with him *George W. Woodruff,* Attorney General, and *John Robert Jones,* Deputy Attorney General, for appellee.—Defendant is a dealer: Knisley v. Cotterel, 196 Pa. 614; Com. v. Thomas Potter Sons & Co., 159 Pa. 583; Com. v. Plumbing Co., 30 Pa. Dist. R. 275; Anheuser Busch Brewing Assn. v. United States, 207 U. S. 556; Com. v. Dyer Quarry Co., 250 Pa. 589; Com. v. Beef Co., 242 Pa. 163.

To claim exemption as a manufacturer, a corporation must be chartered as a manufacturing corporation, and

show that its capital is actually and exclusively employed in manufacturing within the state: Com. v. Dyer Quarry Co., 250 Pa. 589; Com. v. Murphy Co., Inc., 1 Pa. Dist. & Co. R. 58; Com. v. Plumbing & Heating, 30 Pa. Dist. R. 275.

OPINION BY MR. JUSTICE SIMPSON, February 11, 1924:

The board of mercantile appraisers for the County of Philadelphia assessed a mercantile tax against defendant; an appeal was taken to the court below, which sustained the assessment, in so far as it related to green coffee, which had been roasted in Philadelphia and thereafter sold to residents of Pennsylvania; but set it aside in all other respects. Still dissatisfied, defendant now appeals to this court.

It is admitted that cleaning the coffee bean and removing the outer skins, whether this occurs before or during the actual roasting, is not a manufacturing process; but appellant claims that because roasting the bean changes its color and chemical composition, decreases its weight by the expulsion of moisture, and enlarges its size and modifies its form, when it "cracks and pops, like popcorn," the roasting process does constitute manufacturing; and hence under section 11 of the Act of April 22, 1846, P. L. 486, 489, as interpreted by the Act of February 27, 1868, P. L. 43, it is exempted from payment of the tax. The litigants agree that this contention is to be resolved by ascertaining the true meaning of the word "manufacture," as it is used in these statutes, and hence we turn to their consideration.

Prior to the Act of May 4, 1841, P. L. 307, mercantile license taxes were assessed only against retailers of foreign merchandise. By section 10 thereof this discrimination was repealed in part; and by section 11 of the Act of 1846, supra, "dealers in goods, wares and merchandise, the growth, product and manufacture of the United States...... [are] required to pay the same annual tax and license fee, as......dealers in foreign mer-

chandise: Provided, That mechanics who keep a store or warehouse at their own shop or manufactory, for the purpose of vending their own manufactures exclusively, shall not be required to take out any license."

The limiting of this exemption to "mechanics," at once created difficulties, as will be seen by Berks County v. Bertolet, 13 Pa. 521, 523, which decision was doubted in Norris Brothers v. The Commonwealth, 27 Pa. 494, and finally overruled in Com. v. Campbell, 33 Pa. 380, not because of what it said regarding "mechanics," however, but because it did not give effect to the fact that only "dealers" were to be taxed. In the second of those cases we said at page 495: "A dealer, in the popular, and therefore in the statutory, sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again." Most of the questions which have since arisen, under our mercantile tax laws, have depended on the application of this definition to the facts of the particular case, and are, therefore, of little value in this proceeding; for, admittedly, appellant buys the coffee bean to sell it again, and hence is liable, unless the Act of 1846, as interpreted by that of 1868, now to be quoted, relieves him therefrom.

It says that "the true intent and meaning of the eleventh section......[of the Act of 1846] is hereby declared to be, that a manufacturer or mechanic, not having a store or warehouse apart from his manufactory or workshop, for the purpose of vending goods, such manufacturer or mechanic shall not be classified or required to pay the annual tax and license as is now required in relation to foreign dealers." It is clear, when this language is attentively considered, that the act was passed for two purposes only: (1) to resolve the difficulty regarding the apparent limitation to "mechanics," in the foregoing exempting proviso to the Act of 1846, and (2) to make clear the intention to hold manufacturers and mechanics liable, when they sell elsewhere than at their manufactories or workshops.

The literal purport of the verb "manufacture" is to make by hand, and doubtless this was its only interpretation at the time it was adopted as a word. As time went on, however, and machinery began to be utilized for the making of articles, the word obtained an enlarged meaning, until now it is defined in Rawle's Third Revision of Bouvier's Law Dictionary, as signifying "To make or fabricate raw materials by hand, art or machinery, and work [them] into forms convenient for use"; and in Webster's New International Dictionary, as "The process or operation of making wares or any material products by hand, by machinery, or by other agency; often, such process or operation carried on systematically with division of labor and with the use of machinery." It will be observed, of course, that while this latter definition suggests the possibility of manufacturing by means of some unnamed agency, other than the hand or machinery, all such means, whatever they are, are conditioned by the vital word "making," which is defined, in the book last referred to, as the "action of one that makes (forming, causing, doing, etc.)."

We are not without a decision on this point. While the statute was still new, and the intention of the lawmaker was well understood, we said in Norris Brothers v. The Commonwealth, supra, at page 496: "But what is manufacturing? It is making. To make in the mechanical sense does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process. A cunning worker in metals is the maker of the wares he fashions, though he did not dig the ore from the earth, or carry it through every subsequent stage of refinement. A shoemaker is none the less a manufacturer of shoes because he does not also tan the leather. A bureau is made by the cabinetmaker, though it con-

sists in part of locks, knobs, and screws, bought ready made from a dealer in hardware."

It is true this quotation speaks of manufacturing "in the mechanical sense," but this is the only kind there is, so far as concerns the Acts of 1846 and 1868. In the former, the language of the exempting clause is limited to "mechanics," who, of course, make only mechanical changes. The Act of 1868 was not intended to enlarge the subject-matter of the exemption, but uses the word "manufacturer" simply to clear up the difficulty to which reference has been made, and to make certain that the words "manufactory" and "manufactures," used in the Act of 1846, are not given a restricted meaning because of the apparent limitation of the exemption to "mechanics." This collocation of words, and the history and purpose of the amendment, bear out the conclusion above stated. Even if they raised doubts on the subject, which we think is not the case, we should be compelled to resolve them in favor of appellee, under the rule that language which relieves from taxation must be strictly construed: Academy of Fine Arts v. Phila. Co., 22 Pa. 496; Com. v. Lackawanna Iron & Coal Co., 129 Pa. 346, 356; Callery's App., 272 Pa. 255, 272.

In the case of Pittsburgh Brewers' & Bottlers' Supply Company's Mercantile Tax, 38 Pa. Superior Ct. 121, 127-8, it is said, by RICE, P. J., "The cases fall very far short of establishing the general proposition that venders of or dealers in goods, wares and merchandise must necessarily mean those, and those only, who carry on the business of selling things previously purchased, in the same form and condition, and not in the form or condition to which they have been changed after passing through some process......It is reasonable to suppose that if the legislature had intended in the first clause of the [second] section [of the Act of May 2, 1899, P. L. 184, under which the tax both there and here was assessed] to include such sales only as are made to persons carrying on the business of buying and selling goods in

an unchanged form or condition, they would not have left that qualification to uncertain inference, but would have expressed it in unequivocal terms." This was also the effect of our decision in Com. v. Consolidated Dressed Beef Co., 245 Pa. 605. In each of these cases the change in "form and condition" was entirely physical, and appellant seeks, therefore, to distinguish them from the instant case, because in roasting coffee there is also a chemical change. If this supposed distinction furnished the test, then frying eggs, baking potatoes, stewing tomatoes, etc., etc., would be manufacturing, for the application of heat to them requires skill, and effects a chemical change also; this is probably as much so in the first of these instances as is the case in roasting coffee. In each and all of these matters, "in the popular, and therefore in the statutory, sense of the word," it is probable that few, if any, people would say that the process of cooking is in fact manufacturing, and hence it is not within the meaning of that word in the Acts of 1846 and 1864.

Counsel have strongly urged us to construe the words "manufacturer" and "manufactory," as appearing in those statutes, in the same way as the word "manufacturing" has been construed, when interpreting the statutes exempting manufacturing corporations from state taxation. The conclusion reached on that subject is grounded, however, on prior acts declaring what shall be manufacturing corporations (Com. v. Northern Electric Light & Power Co., 145 Pa. 105, 118-19), and is not authority for the meaning of even the same words in other acts of assembly: Com. v. Keystone Electric Light, Heat and Power Co., 193 Pa. 245. The mercantile license tax has its own historic background in entirely different statutes, namely, those subjecting dealers in foreign goods, wares and merchandise to this particular form of taxation; solely in this light, and in the exempting provisions of the Acts of 1846 and 1868 themselves, we must find the solution of our present question. Having

regard thereto and to the purpose of the exemption, we have no hesitancy in saying that it does not cover the case of merely cleaning and effecting a chemical change in a natural product, however skilful and beneficial the process and its result may be, even though there also occurs an incidental change in the size, form and weight of that product.

The judgment of the court below is affirmed.