## Koolvent Aluminum Awning Co. of Pittsburgh *v.* Pittsburgh et al., Appellants.

Argued April 18, 1958. Before RHODES, P. J., HIRT, GUNTHER, WOODSIDE, ERVIN, and WATKINS, JJ. (WRIGHT, J., absent).

*J. Frank McKenna, Jr.* and *Marcus Aaron, II,* for City of Pittsburgh, appellant.

*Oscar G. Peterson,* Assistant Solicitor, with him *Mortimer B. Lesher,* Solicitor, for School District of Pittsburgh, appellant.

*Coleman Harrison,* for appellee.

OPINION BY WOODSIDE, J., June 11, 1958:

This opinion is written on two appeals taken from judgments entered in mercantile tax cases by the County Court of Allegheny County in favor of Koolvent Aluminum Awning Co. of Pittsburgh and against the City of Pittsburgh in the one case, and the School District of Pittsburgh in the other case.

The Act of June 20, 1947, P. L. 745, 24 PS §582.1 et seq., *imposes* an annual mercantile license tax upon "dealers in goods, wares and merchandise" within the School District of Pittsburgh. See section 4 of the above act, 24 PS §582.4. "Dealer", by statutory definition, does ". . . not include any mechanic who keeps a store or warehouse at his place of manufactory or workshop in which he sells only his own manufactures, any person vending or disposing of articles of his own growth, produce or manufacture, or any hawker . . ." Section 1, supra, 24 PS §582.1(4).

The Act of June 25, 1947, P. L. 1145, commonly known as the Tax Anything Act, as amended by the Act of May 9, 1949, P. L. 898, 53 PS §6851 et seq., *authorizes* certain political subdivisions, including the City of Pittsburgh, in their discretion by ordinance for general revenue purposes to levy, assess, and collect taxes on persons, transactions, occupations, privileges, subjects and personal property except that such local subdivisions shall not have authority "(4) to levy, assess and collect a tax on goods and articles manufactured in such political subdivision or on the by-products of manufacture, or on minerals, timber, natural

resources and farm products produced in such political subdivision or on the preparation or processing thereof for use or market, or *on any privilege, act or transaction related to the business of manufacturing,* the production, preparation or processing of minerals, timber and natural resources, or farm products by manufacturers, by producers and by farmers with respect to the goods, articles and products of their own manufacture, production or growth, or on any privilege, act or transaction relating to the business of processing by-products of manufacture, or on the transportation, loading unloading or dumping or storage of such goods, articles, products or by-products." (Emphasis supplied).

Under the authority of the above act, the City of Pittsburgh passed an ordinance imposing a mercantile tax which it assessed against the Koolvent Aluminum Awning Co. of Pittsburgh for the years 1952, 1953, and 1954. The school districts also assessed a tax against the said company for the same years, which it claims was imposed by the Act of June 20, 1947, P. L. 745, supra.

The company paid these taxes under protest, and then appealed the assessments to the County Court. (For jurisdiction of that court see 17 PS §626(L)). That court, after consolidating the cases for hearing, entered judgments in favor of the company for the taxes paid to the city and school district, holding that the political subdivisions had no authority under the law to assess the taxes in question upon the company. The city and school district then appealed to this Court.

Although the language of the two above acts differs, it is settled that no tax is due to either the city or the school district if the articles sold by the appellee were manufactured by it. *General Foods Corp. v. Pittsburgh,* 383 Pa. 244, 251, 118 A. 2d 572 (1955); *Fischer v. Pittsburgh,* 383 Pa. 138, 118 A. 2d 157

(1955); *Isaly Dairy Co. v. Pittsburgh,* 379 Pa. 108, 108 A. 2d 728 (1954).

There is no real dispute concerning the manner in which appellee's business is conducted. Much valuable time might have been saved to all concerned, including the court, had counsel stipulated the facts, as has been done many hundreds of times during the last half century in tax cases in the Commonwealth Court in Dauphin County.

The awnings sold by the appellee during the years in question were all custom-made. An affiliate corporation purchased aluminum sheets and strips, which it cleaned, treated for painting, painted, cut to sizes required for the making of awnings, and then stocked. When the appellee received an order for awnings it took the measurements and obtained from its affiliate the necessary parts to make the awnings.

The court below found that the appellee then proceeded as follows: The work would be performed on a "layout work table." The "layout man," having gathered together the necessary materials, would proceed to construct the various component parts of the awning. He would select appropriate pieces of aluminum, trim them if necessary, form and bend them into the starter, top and bottom pans, and louvers, and fit them together.

This forming and bending requires skill, "has to be done with great precision", and must be done within certain tolerances in order that the parts fit into the completed awning. The angles and shapes are prescribed by certain tables which the workman follows. After all of these parts have been formed, the workman drills them at appropriate places and rivets them to another part of the awning known as a "sawtooth section." The workman then selects lengths of metal angle bars, cuts them to appropriate lengths, drills

them, and rivets them into place in the awning as braces. As straight braces, the workman selects lengths of pipe, cuts them to size, threads them, and fastens them in place in the awning.

In making the awning, the workman has performed the following operations on sheets and bars: cutting, bending, drilling, forming, riveting, threading, trimming and fitting. All of the operations described, except painting of the coil aluminum, were performed by the appellee . . . The awning being completed, depending on its size, either assembled or in sections, it would be placed on a truck for delivery to the place of installation.

In their jointly prepared brief the city and school district states the question to be "Where aluminum strips or sheets, purchased as such are cut, trimmed, bent, painted and later used to form awnings, are such awnings manufactured?" Although we think it is self evident that awnings are manufactured, we have, nevertheless, thoroughly examined the question and carefully reviewed the facts and the relevant statutes and decisions.

The case before us offers no difficulties. The facts here are so clear and the conclusion so obvious that we need not be concerned with any question of burden of proof, presumption or strict construction. See, however, *Fischer v. Pittsburgh,* supra, 383 Pa. 138, 141, 142, 118 A. 2d 157 (1955). The matter is disposed of by applying a principle established by the Supreme Court over a hundred years ago, and cited seventy some times since then.

"A dealer", said our Supreme Court in *Norris Brothers v. Commonwealth,* 27 Pa. 494, 495 (1856) "in the popular, and therefore in the statutory, sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again." See also *Com-*

*monwealth v. Campbell,* 33 Pa. 380, 385 (1859) and *Commonwealth v. Lutz,* 284 Pa. 184, 186, 130 A. 410 (1925).

In *Pittsburgh Brewers' & Bottlers' Supply Company's Mercantile Tax,* 38 Pa. Superior Ct. 121 (1909); *Commonwealth v. Lowry-Rodgers Co.,* 279 Pa. 361, 364, 123 A. 855 (1924), and *Commonwealth v. Bay State Milling Co.,* 312 Pa. 28, 31, 167 A. 307 (1933), there was some deviation from the above definition, but it was subsequently repeated in *Commonwealth v. Penna. Heat and Power Co,* 333 Pa. 46, 3 A. 2d 412 (1939); *Commonwealth v. McKinley-Gregg Auto Co.,* 345 Pa. 544, 547, 28 A. 2d 919 (1942); and applied to one of the statutes before us in *Paper Products Co. v. Pittsburgh,* 391 Pa. 87, 91, 137 A. 2d 253 (1958).

Although the definition of "dealer" has a bearing upon the issue in this case, nevertheless, we are not so much concerned with it as we are with the definition of "manufacturing." Our Supreme Court defined that in *Norris Brothers v. Commonwealth,* supra, 27 Pa. 494, 496, in the following language: "But what is manufacturing? It is making. To make in the mechanical sense does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process. A cunning worker in metals is the maker of the wares he fashions, though he did not dig the ore from the earth, or carry it through every subsequent stage of refinement. A shoemaker is none the less a manufacturer of shoes because he does not also tan the leather. A bureau is made by the cabinet-maker, though it consists in part of locks, knobs, and screws, bought ready made from a dealer in hardware."

Other cases have also defined or described the word. In *Reick-McJunkin Dairy Co. v. Pittsburgh School District*, 362 Pa. 13, 18, 66 A. 2d 295 (1949), it was said, "The word 'manufacture' is to be taken as used by the legislature in its ordinary and general sense . . ." A thing is a "manufactured article" when the product is a new and different article with a distinctive name, character and use. *Commonwealth v. McCrady-Rodgers Co.*, 316 Pa. 155, 158, 174 A. 395 (1934). "The basic principle is that a new product is made out of existing materials:" *Commonwealth v. Peerless Paper Specialty, Inc.*, 344 Pa. 283, 285, 25 A. 2d 323 (1942). The process of manufacture brings about the production of some new article by the application of skill and labor to the original substances or material out of which such new product emerges. *Commonwealth v. Weiland Packing Co.*, 292 Pa. 447, 450, 141 A. 148 (1928).

Of course manufacturers sell their wares, but that does not make them dealers. *Commonwealth v. Campbell*, supra, 33 Pa. 380, 385 (1859). It has been said that one cannot be said to be a dealer when the thing which he sells is not the thing which he buys. *Commonwealth v. Gormly*, 173 Pa. 586, 589, 34 A. 282 (1896).

In applying the principles set forth in the *Norris Brothers* case, and other cases cited above, the Appellate Courts of this Commonwealth have held the following business activities, among others, to be manufacturing: Making cement and asphalt floors;[1] converting paper and glue into sealing tape;[2] making kegs and

---

[1] *Commonwealth v. Filbert Paving & Construction Co.*, 229 Pa. 231, 78 A. 104 (1910).

[2] *Commonwealth v. Peerless*, supra, 344 Pa. 283, 25 A. 2d 323 (1942).

barrels;[3] making monuments out of stones;[4] making locomotives;[5] printing;[6] making cigars,[7] and making cement.[8]

The appellants rely primarily upon the food processing cases in which it was held that roasting coffee;[9] distilling water;[10] curing hams and bacon;[11] pasteurizing milk, producing buttermilk, sweetened condensed milk and chocolate milk;[12] decaffinated and instant coffee, and tapioca,[13] is not manufacturing. (Making potato chips,[14] butter, cheese, and ice cream have been held to be manufacturing.)[15] The appellant further re-

---

[3] *Edwin Bell Cooperage Co. v. Pittsburgh*, 177 Pa. Superior Ct. 567, 112 A. 2d 662 (1955).

[4] *Horigan v. Pittsburgh*, 178 Pa. Superior Ct. 558, 116 A. 2d 228 (1955).

[5] *Norris Brothers v. Commonwealth*, supra, 27 Pa. 494 (1856).

[6] *Messenger Publishing Co. v. Allegheny County*, 183 Pa. Superior Ct. 407, 132 A. 2d 768 (1957).

[7] *Commonwealth v. Vetterlein*, 29 Pa. Superior Ct. 294, adopted by the Supreme Court in 214 Pa. 21, 63 A. 192 (1906).

[8] *Commonwealth v. McCrady-Rodgers Co.*, supra, 316 Pa. 155, 174 A. 395 (1934).

[9] *Commonwealth v. Lowry-Rodgers*, supra, 279 Pa. 361, 123 A. 855 (1924), and *Commonwealth v. Glendora Products Co.*, 297 Pa. 305, 146 A. 896 (1929).

[10] *Commonwealth v. Sunbeam Water Co.*, 284 Pa. 180, 130 A. 405 (1925) but see *Commonwealth v. Williamson*, 48 Pa. Superior Ct. 561 (1912) cited in the *Sunbeam* case.

[11] *Commonwealth v. Weiland Packing Co.*, supra, 292 Pa. 447, 141 A. 148 (1928) and *Armour and Co. v. Pittsburgh*, 363 Pa. 109, 39 A. 2d 405 (1949).

[12] *Reick-McJunkin Dairy Co. v. Pittsburgh School District*, supra, 362 Pa. 13, 66 A. 2d 295 (1949).

[13] *General Foods Corp. v. Pittsburgh*, supra, 383 Pa. 244, 118 A. 2d 572 (1955).

[14] *Commonwealth v. Snyder's Bakery*, 348 Pa. 308, 35 A. 2d 260 (1944).

[15] *Armour and Co.* case and *Reick-McJunkin Dairy Co.* cases in above notes.

lies upon the cases which hold that the crushing of stone[16] and grinding rock into silica sand,[17] are not manufacturing. None of these cases is applicable to the case before us. What was done to the food and stone is not generally referred to as manufacturing, and does not change the raw material into a new product with a distinctive name, character and use. Construction of buildings, likewise, is not "manufacturing" in its ordinary and general sense and, therefore, not in its legal sense. *Commonwealth v. Wark Co.*, 301 Pa. 150, 151 A. 786 (1930).

It is the contention of the appellants that the two corporations together do not manufacture anything. Changing aluminum sheets and strips into awnings, which are entirely new and different products is clearly manufacturing. But we are concerned here only with the appellee corporation, and not with its affiliate.

The appellee "makes" awnings. It gives "new shapes, new qualities and new combinations" to the aluminum parts. What it makes is "a new and different article with a distinctive name, character and use." It "brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges." How could any business activity fit more precisely into the definitions of manufacturing cited above?

The appellants contend further that even if the operations of the two corporations together do constitute manufacturing, the operation of the appellee alone does not constitute manufacturing, because part of the work

---

[16] *Commonwealth v. John T. Dyer Quarry Co.*, 250 Pa. 589, 95 A. 797 (1915).

[17] *Commonwealth v. The Welsh M. M. & Kaolin Manufacturing Co.*, 265 Pa. 380, 108 A. 722 (1919).

is done by the other corporation. A similar contention was made in the *Norris Brothers* case, supra. There it was argued that since the locomotives made by Norris Brothers were not their own manufacture exclusively, Norris Brothers were not manufacturers. The court rejected the contention in the language which we quoted above. If the principle stated in the *Norris Brothers* case was sound when manufactured articles were relatively simple, it certainly would be sound today when many products are composed of parts made by a great number of manufacturers. Using the term "in its ordinary and general sense" who would say that the makers of aeroplanes do not "manufacture" them because they use parts—thousands of them—that were manufactured by other companies?

The court below was correct in holding that the appellee is engaged in the business of manufacturing awnings, and, therefore, is not subject to the above taxes on the sales of such awnings.

Both judgments are affirmed.