Hazen Engineering Company, Appellant, *v.* Pittsburgh.

532

Argued April 13, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Louis Vaira,* with him *Albert G. Brown,* for appellant.

*Edmund W. Ridall, Jr.,* Assistant School Solicitor, with him *Niles Anderson,* School Solicitor, for School District of Pittsburgh, appellee.

*Regis C. Nairn*, Assistant City Solicitor, and *David Stahl*, City Solicitor, for City of Pittsburgh, appellee.

OPINION BY WOODSIDE, J., June 10, 1959:

In an effort to determine a simple legal problem, based upon facts easily ascertainable and beyond legitimate dispute, the appellant corporation filed a bill in equity on December 10, 1951. It, and presumably the taxing authorities, wanted to know whether the corporation was a "manufacturer," as the term is used in a tax ordinance of the City of Pittsburgh, and the act authorizing the adoption thereof, and an act imposing a tax on residents of the school district of that city.

The city and school district both answered the bill, and after considerable testimony was taken, an adjudication was filed by the chancellor on August 27, 1956. Exceptions to the adjudication were filed and the matter finally disposed of in the court below on September 8, 1958, nearly seven years after the bill in equity was filed.

The adjudication, and the opinion written on exceptions to it, dealt almost exclusively with findings of fact. Indeed, everybody connected with the case seems to have become so steeped in the ascertainment of facts that little attention was given to the applicable ordinance, statutes, and decisions. Even so, without the aid of the unprinted record and the oral argument, it would have been impossible for us to determine the facts with sufficient clarity to apply the law to them.

Under these circumstances, it seems advisable to refer briefly to the inefficiencies of a practice which, after seven years of litigation, permits a case to reach an appellate court with inadequate development of facts, especially when the facts should never have been in actual dispute in the first place.

A century ago when a similar question was before the Court, "the parties agreed upon the facts as a case stated." *Norris Bros. v. The Commonwealth*, 27 Pa. 494 (1856). Why should we not be able to thus expedite similar cases today? An investigation, no more thorough and time-consuming than was necessary for the proper presentation of testimony, should have enabled counsel in this case to stipulate the facts which could have been stated more fully and more clearly than was possible through presentation of oral testimony.[1]

Of course, a solicitor's effort to stipulate facts can be defeated by the taxpayer refusing to state fully and accurately the manner of his doing business, and by his refusing the taxing authorities a reasonable opportunity to check the relevant facts.

We are confident that the solicitors' offices do not insist upon the taking of testimony with the hope that the taxpayers may fail to accurately establish the facts and thus be deprived of the right that would be theirs if the court had the whole truth. Solicitors, like attor-

---

[1] The "Commonwealth Court" in Dauphin County has been faced with the problem of determining thousands of State tax cases, scores of them dealing with manufacturer's exemptions. Over the years, the attorneys general and their deputies, with full co-operation of the bar of the entire Commonwealth, have uniformly waived jury trials, and after investigation as to their accuracy, have stipulated the facts. Occasionally, when the Commonwealth and the taxpayer cannot agree upon certain facts, testimony must be taken, but such instances are rare and the testimony is always confined to those facts upon which there is real disagreement. As a result of the stipulations being carefully worded by lawyers, the facts are far more accurately and fully stated than is possible by any other means. Arguments are thereafter held before the court en banc, at which time the lawyers and court can concentrate on the legal problems. By this method, cases are considered more thoroughly and disposed of more promptly.

neys general, always win when justice is done, and always lose when justice is denied, for whatever reason. There could be no just criticism of the solicitors for agreeing in open court to facts in cases like this. As we view it, solicitors, in stipulating facts wherever possible, are merely assuming a proper legal responsibility imposed upon them as officers of the court. We strongly recommend that the practice followed in this case be carefully examined by counsel and court, and that, hereafter, in cases where it is practical and convenient to do so, and particularly in tax matters of this type, the facts be carefully prepared by counsel and stipulated. The bar has a duty to aid in administering the law not only justly, but also efficiently.

The case here involves the imposition of two different taxes. A bill in equity was filed against different governmental units to restrain the imposition of different taxes. As no question was raised by any of the parties concerning any procedural question, and as there has been no suggestion that the imposition of the two taxes may not present identical problems, we shall limit our consideration to the question argued— whether the appellant is a manufacturer.

One of the taxes in question was imposed by the Act of June 20, 1947, P. L. 745, 24 PS §582.1 et seq. upon "dealers in . . . goods, wares and merchandise" within the School District of Pittsburgh. "Dealer", by statutory definition, does not include a person (which includes a corporation) "vending or disposing of articles of his own growth, produce or manufacture."

The other tax was imposed by an ordinance of the City of Pittsburgh which was passed under authority given it by the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §6851 et seq., and commonly known as the "Tax Anything Act." This act specifically withholds from the city the right to levy a tax upon "any

privilege, act or transaction related to the business of manufacturing." The language of the ordinance is not important in this case, and, of course, the regulations adopted by the city under it are of no significance here, as the city cannot extend by ordinance or regulations its right to tax beyond the authority given it by the legislature.

The article in which the appellant deals is manufactured, but is the appellant engaged in the manufacturing of it?

Hazen Engineering Company, the appellant, is a Pennsylvania corporation, organized for the purpose of "manufacturing and selling of furnace recuperators."

Recuperators are patented devices placed in various types of furnaces in order to save fuel and speed production through heating the air used for combustion. The devices are placed in the flues where they pick up by absorption heat which is transferred to the air passing through them to the places of combustion. The units vary from approximately 2½ feet by 8 feet to 16 feet by 34 feet and from 8 to 300 elements. Each one must be specially designed and built for the particular furnace into which it is to be installed. The designing requires rare engineering skill.

The appellant company employs five salaried employes including the majority stockholder, a chief engineer, a consulting engineer, another engineer, a field man and an accountant. Upon receiving an order from the owner of a furnace, Hazen sends one of its employes to examine the furnace and obtain the necessary information from which it designs a recuperator for that particular furnace. It then purchases the necessary steel and other materials from which the recuperator is to be made. The type and quality of steel to be used in each particular part is important.

Under arrangements with Rasner & Dinger, a firm located in Pittsburgh, the employes of that company, under the immediate direction of the foreman of that company, in the manufacturing plant of that company perform the work upon the steel and raw materials furnished by Hazen. One of Hazen's employes is present at the Rasner & Dinger plant most of the time during the process of this work and carefully supervises the construction, and tests the steel to be used in the device. This testing is done in a testing furnace owned by Hazen and located on Rasner & Dinger's property. Hazen engineers advise the Rasner & Dinger foreman concerning the manner in which the work is to be performed by the latter's men. In addition to the testing furnace, Hazen also owns a welding machine and forms which are kept on Rasner & Dinger's property, and which are used exclusively by Rasner & Dinger employes in making the recuperators. Hazen has an office in Pittsburgh, and a plot of ground near the Rasner & Dinger plant where it stocks steel and other materials used in making the recuperators, but it has no manufacturing plant of its own. The physical work on the recuperators is done exclusively by the Rasner & Dinger employes, and the Hazen employes do only supervising.

The unit thus built on Rasner & Dinger's premises is then taken to the furnace and there installed. What is involved in the installation is not clearly set forth in the evidence and, as the appellant has not argued that placing the recuperators into the furnace is a part of the alleged manufacturing process, we shall not delve into it.

The two companies have no corporate relationship. Hazen pays Rasner & Dinger under a formula based primarily upon the labor involved in the manufacturing of the recuperators. The charge is the same as that

which would be charged any other customer of Rasner & Dinger.

The appellees admit that the recuperators are manufactured, and that the work done by Rasner & Dinger on the recuperators is manufacturing. It is their contention, however, that the manufacturing of the recuperators is done by Rasner & Dinger, and that Hazen's connection with the making of the recuperators is not that of a manufacturer.

The court below concluded that the appellant merely designs the recuperators and exercises only that supervisory control over their manufacturing as is necessary to insure technical correspondence between the design and the finished article. The actual manufacturing, the court held, was done by Rasner & Dinger. It thus concluded that Hazen was subject to both taxes and dismissed the bill in equity.

The appellees and the court below consider the fact that the appellant corporation had no manufacturing plant as one of the determining factors of this case. That the company has no permanent plant or establishment where it constructs the recuperators is not a determining factor. See *Commonwealth v. William Swindell & Brothers Co.*, 22 Dauphin 184 (1919). In *Commonwealth v. McCrady-Rodgers Co.*, 316 Pa. 155, 160, 174 A. 395 (1934) involving transient-mixed concrete, although the company owned bins where it stored and weighed the ingredients put into the mixer, the Court said, "It is immaterial that the making, sale and delivery is at the 'work' ".

There is no doubt that a recuperator is manufactured, as it is "a new and different article" distinct from the materials of which it is made, and it has "a distinctive name, character and use." *Commonwealth v. McCrady-Rodgers Co.*, supra, 316 Pa. 155, 158, 174 A. 395 (1934) ; *Koolvent Aluminum Co. v. Pittsburgh,*

186 Pa. Superior Ct. 233, 142 A. 2d 428 (1958); *Commonwealth v. Peerless Paper Specialty, Inc.*, 344 Pa. 283, 285, 25 A. 2d 323 (1942). Furthermore, the process of making a recuperator would be referred to as "manufacturing" in the common and approved usage of the word.

There is also no doubt that more than one person or corporation can be engaged in the manufacturing of a single article and thus more than one person or corporation, otherwise subject to the taxes here involved, may not be subject to the taxes because they are both manufacturers of the article.

In *Norris Brothers v. Commonwealth*, supra, 27 Pa. 494, 496, we find the following: "But what is manufacturing? It is making. To make in the mechanical sense does not signify to create out of nothing; for that surpasses all human power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process. A cunning worker in metals is the maker of the wares he fashions, though he did not dig the ore from the earth, or carry it through every subsequent stage of refinement. A shoemaker is none the less a manufacturer of shoes because he does not also tan the leather. A bureau is made by the cabinet-maker, though it consists in part of locks, knobs, and screws, bought ready made from a dealer in hardware." See also *Koolvent Aluminum Co. v. Pittsburgh*, supra, 186 Pa. Superior Ct. 233, 142 A. 2d 428 (1958).

It does not follow, however, that every person associated with the making of a product is a manufacturer.

In *Commonwealth v. Williamsport Rail Co.*, 250 Pa. 596, 95 A. 795 (1915) the Supreme Court adopted

the language of the Dauphin County Court in holding that "Buying raw material and sending the same to a company owning a plant, and paying that company an agreed price to shape the raw material into a manufactured product is not carrying on the business of manufacturing within the State as contemplated by our laws."

It is sometimes difficult to determine with legal exactness what is or what is not manufacturing. *Commonwealth v. McCrady-Rodgers Company*, supra, 316 Pa. 155, 174 A. 395 (1934). As stated by Judge, now Justice, Bok in *Philadelphia School District v. Mutual Trimming Co.*, 14 D. & C. 2d 207, 209 (1957) "It is easier to feel the line of distinction in the case than to express it."

This case is not without difficulty. We would be likely to include among those engaged in the manufacturing of an automobile, not only those employes of the corporation who handle the parts and operate the machines on the assembly line and their foremen, but also the designers who originate the style, the draftsmen who prepare the plans, the inspectors who test the component parts and the drivers who test the finished product. All are a part of the process of manufacturing an automobile, and necessary to the creation of the end product which the corporation makes to sell. On the other hand, the person whose mind conceives of a new machine, who patents it, and who prepares plans from which another person makes it, is generally looked upon as the inventor but not the manufacturer of the machine. Likewise, the person who prepares the blueprints from which another produces a device is generally looked upon as rendering engineering services and not manufacturing services.

Doing the same thing by different people under different circumstances has been held to be manufactur-

ing in one case and not manufacturing in the other. For example, a person in constructing a building may take stone, sand, cement and water, mix them in a machine and place the product as concrete in the building as a component part of it. The law treats him as a building constructor and not as a manufacturer. *Commonwealth v. Wark Co.*, 301 Pa. 150, 151 A. 786 (1930). On the other hand, if a person measures, weighs and mixes these same ingredients and delivers them in a plastic state by a transient-mixer to the site of construction where the building constructor uses the mix in the construction of the building, then the process person delivering the material to the building contractor is recognized by the law as a manufacturer. *Commonwealth v. McCrady-Rodgers Co.*, supra, 316 Pa. 155, 174 A. 395 (1934).

In determining what is manufacturing we must look not only to the definitions, but we must give consideration to the generally accepted use of the word. Constructing a building is creating a new and different article which has a distinctive name, character and use. It thus fits into the definition of manufacturing which is frequently used by the courts, but it is not considered manufacturing because in its ordinary and general sense the word "manufacturing" is not applied to the construction of a building. *Commonwealth v. Wark Co.*, supra, 301 Pa. 150, 154, 151 A. 786 (1930). See also *Commonwealth v. Northern Electric Light & Power Co.*, 145 Pa. 105, 22 A. 839 (1891).

Section 33 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §533, provides that words used in statutes shall be construed according to their common and approved usage unless they are technical words, or have acquired a peculiar and appropriate meaning or are defined by statute.

We agree with the court below that the services rendered by the appellant in this case would not ordinarily be referred to as manufacturing services, but rather would be referred to as engineering services. Engineering is not manufacturing. *Commonwealth v. Boon & Sample, Inc.*, 35 Dauphin 404, 406 (1931).

Manufacturing is nearly always associated with the use of manual or mechanical energy; it is not ordinarily used to describe products of labor entirely or mainly intellectual, or clerical in character. *H. M. Rowe Co. v. Beck*, 131 A. 509 (Md. 1925). In that case Rowe Company typed, proofed and arranged into page form a book which it had printed in galley form by one independent contractor, electro-typed by another independent contractor and bound in book form by a third independent contractor. The Maryland court decided that although the three independent contractors were engaged in manufacturing, the Rowe Company by originating and typing the material, correcting, proofing, paging, and supervising the printing was not engaged in manufacturing. See also *People ex rel. Jewellers' Circular Publishing Co. v. Roberts*, 155 N. Y. 1, 49 N.E. 248 (1898), where the company was held not to be a manufacturer although it had a foreman who overlooked and watched the work of manufacturing as it progressed in the hands of an independent contractor. See also *State v. Soard's Directory Co., Limited*, 148 La. 1013, 88 So. 251 (1921). Contra see *State ex rel. North American Phonograph Co. v. State Board of Assessors*, 24 A. 507 (N.Y. 1892), where it was held that the company doing the actual manufacturing was an agent of the phonograph company and therefore the phonograph company was a manufacturer.

Of the numerous cases in Pennsylvania dealing with manufacturing there are none in point here. There is some similarity between this case and the cases of *Phila.*

*School District v. Mutual Trimming Co.,* supra, 14 D. & C. 2d 207 (1957); *Commonwealth v. Lichtman,* 36 D. & C. 301 (1939); *Commonwealth v. Boon & Sample, Inc.,* supra, 35 Dauphin 404 (1931); *Commonwealth v. Williamsport Rail Company,* supra, 250 Pa. 596, 95 A. 795 (1915). These cases all support the contentions of the appellees.

Everything done here by the appellant was done by a company in one of the cases cited in this opinion which held the company was not a manufacturer. We are of the opinion that Rasner & Dinger were the manufacturers of the recuperators and that the services rendered by the appellant in planning, laying out, testing and supervising the manufacturing were engineering and inspecting services, but not manufacturing services. The appellant is not a manufacturer.

Order affirmed.