## Arrowhead Sportswear Corp. v. Philadelphia School District

*Nathan Lavine*, for appellant.
*Edward B. Solkin*, for appellee.

KELLEY, J., April 25, 1960.—This is an appeal from a decision of the School District of Philadelphia imposing an assessment against appellant of general business taxes for the years 1957 through 1959.

The Act of May 23, 1949, P. L. 1669, sec. 3, as amended, 24 PS §584.3 (pocket parts), provides that every person engaging in any business in any school district shall pay an annual tax at the rate of one mill on each dollar of the annual receipts thereof. However, certain classifications of receipts are exempted from the purview of the statute, for section 1 of the act provides:

. . . " 'Receipts' shall exclude . . . (d) the receipts or the portion thereof attributable to any sale involving the bona fide delivery of goods, commodities, wares or merchandise of the taxpayer's own manufacture . . .": 24 PS §584.1.

We must decide therefore whether a certain transaction, the receipts from which are sought to be excluded from taxation, is a "sale involving . . . goods . . . of the taxpayer's own manufacture."

Appellant maintains a place of business within the School District of Philadelphia and is engaged in the production of men's outer jackets. It makes designs for the garments, makes patterns from the designs, cuts samples, sews, presses and finishes the samples, and presents the samples to its customer who orders jackets therefrom. Chief Apparel, Inc., of New York City, is its sole customer, and was its sole customer during the tax years in question.

The receipts which are sought by appellant to be excepted from the general business tax accrue to it in the following manner.

Shell material for the outside of the jacket is supplied to appellant by Chief Apparel, Inc. It is sent to appellant from mills designated by Chief Apparel and

is "billed" to appellant only in terms of yardage delivered, and not in dollar amounts. Likewise, lining material is supplied to appellant by Chief Apparel, much in the same manner.

Appellant examines the material so received and sends it out for sponging, if it is woolen. Cotton is not sponged. Then the pattern is laid onto the goods. They are marked, spread, piled and cut. Shading is eliminated by proper tagging and the material is then sorted by size, color and lot numbers. It is then bundled and linings, cut from the material supplied by Chief Apparel, added. The jackets are then sewed and trimmings, including binding, shoulder pads, buttons, zippers, canvas, wiggian and tape, affixed.

The trimmings are acquired by appellant, before their addition to the jacket shell and lining, in a unique manner. Appellant selects the trimmings from suppliers of its own choice and has the bills sent to Chief Apparel. Chief Apparel then bills appellant for what it (Chief) has paid for the trimmings. Appellant pays this bill by crediting the amount thus owed to Chief Apparel on the amount Chief is billed by appellant for the finished jacket.

Appellant supplies thread at its own expense and this expenditure alone amounts to about $11,000 annually.

There is no question but that appellant is the manufacturer of the jackets it produces, even though it works on cloth ostensibly owned by Chief Apparel. The case of Hazen Engineering Company v. Pittsburgh, 189 Pa. Superior Ct. 531, has settled that problem. There, where the firm of Rasner and Dinger made recuperators out of Hazen's steel and under Hazen's supervision, the court was of the opinion that Rasner and Dinger were the manufacturers of the recuperators.

However, the requirements for exemption are still not satisfied, for appellant must not only manufacture the goods, but must show that the receipts, for which it claims an exemption from the general business tax, are attributable to a sale involving the goods so manufactured.

Does appellant sell the jackets to Chief Apparel?

A sale is the act of making over to another for a price; the disposal of goods for money: 8 Oxford English Dictionary 49. It comprehends a transmutation of property from one man to another in consideration of some price or recompense in value: 2 Blackstone Comm. 446. However, the word comprehends something more. It comprehends the transfer of the absolute or general ownership of the property involved (4 Webster's New International Dictionary, 2d Ed. 2203), implying the passing of the general and absolute title to the property as well as the possession: Black's Law Dictionary, 4th Ed. 1503. "A 'sale' consists in the passing of title from the seller to the buyer for a price": Uniform Commercial Code of April 6, 1953, P. L. 3, 12A PS §2-106.

We note that as between appellant and Chief Apparel, appellant could not pass ownership to the jackets to Chief, for ownership, or title, was already in Chief.

"Q. . . . who owns the cloth on which you do the work?

"A. Chief Apparel.

"Q. What you mean is that it comes to you from whatever source Chief, who owns the cloth, designates?

"A. Yes."

The fact that the cloth owned by Chief was the raw material for a jacket manufactured by appellant, and that appellant's manufacturing talents produced an article different from the cloth, namely, the jacket, is immaterial. Where the owner of raw materials de-

livers such raw materials to another who is to use them in manufacturing a finished product, and other property or materials (the trimmings, bindings and thread) are added by the manufacturer, the proportion which they bear to the original property or materials governs in determining the title to the finished article: 1 Am. Jur., Accession, §5.

In the instant case, the cloth supplied to appellant by Chief was valued at $2.80, for the amount necessary to make one jacket, while the additions by appellant were valued at $.50. Clearly then, the ownership of the jackets, when completed, was in Chief, and appellant could not, in the legal sense, "sell" them to Chief.

Appellant contends that a "sale" under the statute in question does not require a transfer of title for a consideration. He supports this contention by citing section 302 of the Regulations of the General Business Tax Bureau for the School District:

"In general, the word 'sale' as used in the definition of the term 'receipts includes, *but is not limited to,* any transfer of title for a consideration. It includes exchange, barter, and bailments.' " (Italics appellant's.)

It is clear that the term "but is not limited to" was meant to apply to situations where title was retained by the seller, perhaps as a security interest, but where all other vestige of ownership was transferred. This would be a sale under the act notwithstanding the fact that title was not transferred. Section 302 does not help appellant.

Appellant further contends that where there is any doubt about the certainty or meaning of any section of the statute in question, the doubt must be resolved in favor of the taxpayer: Philadelphia School District v. Frankford Grocery Company, 376 Pa. 542. There is no doubt or uncertainty about the meaning of the

clause in question. It exempts from taxation receipts attributable to any sale involving goods of the taxpayer's own manufacture. There is no doubt or uncertainty about the meaning of the word "sale". It is a word that has acquired a peculiar and appropriate meaning in the law and has been construed by us according to such peculiar and appropriate meaning: Statutory Construction Act of May 28, 1937, P. L. 1019, art. III, sec. 33, 46 PS §533.

However, appellant may properly deduct from the taxable receipts received from Chief Apparel the portion thereof attributable to the addition of the trimmings and thread to the cloth. With regard to such trimmings and thread there is a similarity between their transfer from appellant to Chief, through incorporation into the jackets, and a sale. The trimmings and thread were property which belonged to appellant and a portion of the price paid to appellant for manufacturing the jackets was consideration for the transfer of ownership to Chief Apparel.

No other part of the transactions between appellant and Chief Apparel may properly be denominated a sale and, accordingly, we enter the following

*Order*

And now, to wit, April 25, 1960, the appeal of Arrowhead Sportswear Corporation in the above captioned case is affirmed as to an exemption from the general business tax insofar as receipts attributable to the sale of trimmings and thread used in the manufacture of outer jackets for Chief Apparel, Inc., are concerned. The appeal as to the balance of receipts attributable to transactions with Chief Apparel, Inc., is dismissed, and the matter is remanded to the School District of Philadelphia, General Business Tax Bureau, for a revised assessment of general business taxes owed by appellant.