City of Pittsburgh and David L. Donahoe, Treasurer of the City of Pittsburgh, Appellants *v.* Dorothy D. Tucker, t/a Lynn Dohoney, Appellee.

Argued October 4, 1982, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and DOYLE, sitting as a panel of three.

*Grace S. Harris,* Assistant City Solicitor, with her *Mead J. Mulvihill, Jr.,* City Solicitor, for appellants.

*Richard B. Tucker, III*, for appellee.

OPINION BY JUDGE DOYLE, May 12, 1983:

Before this Court is an appeal by the City of Pittsburgh from a decision and order of the Court of Common Pleas of Allegheny County which sustained an appeal by Dorothy D. Tucker, t/a Lynn Dohoney (Appellee), from a determination by the City that her activities as a commercial illustrator were taxable under the City's Business Privilege Tax. We reverse.

The facts in the instant matter are essentially undisputed. During calendar year 1977, Appellee was self-employed as a commercial illustrator. Some of her clients were obtained through the services of a commissioned agent and others were found through a brief affiliation with an art studio which, for a commission, exhibited her work and provided Appellee with the use of a lucidograph machine[1] and some supplies. Once a client was retained, Appellee would get a description of the type of illustration that was desired and a price for the project would be agreed on. Through the use of reference materials such as photographs of the subject of the illustration, Appellee would then produce a "rough" which was sent to the client for approval. The materials going into such a "rough" included paper, paint, pencils and/or ink. Appellee purchased approximately ninety per cent of her supplies. After the client indicated what, if any, changes were desired, Appellee would, using the "rough" as a reference, produce a final illustration. This generally involved the application of ink line work to illustration paper, the use of a lucidograph or photostat machine and coloring followed by the appli-

---

[1] A lucidograph machine is used to enlarge or reduce a photograph or sketch to the proportions needed, after which the artist is able to trace over the image. Appellee also contracted for the use of a photostating machine and a duplicator.

cation of a coat of spray varnish for protection. The completed illustration was then delivered to the client for incorporation into whatever use was desired such as magazines, newspapers, billboards or annual reports.

On August 4, 1978, Appellee was audited by the City and assessed a Business Privilege Tax for the year 1978 based upon her gross receipts from 1977.[2] When she filed her tax return, however, Appellee claimed a manufacturing exemption as to all such receipts. Under Section 2(4) of The Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §6902(4), local taxing authorities are specifically denied the authority to levy a tax on "manufacturing" or acts or transactions related to the business thereof.[3] The Act, however, fails to define "manufacturing." The exemption claim was disallowed by the City and, following a Treasurer's Hearing which was held at Appellee's request, the disallowance was affirmed. Appellee then appealed to the common pleas court which, after a hearing, sustained her appeal on the grounds that

> [o]ur consideration of the facts and the testimony in this case leads us to conclude that a profound change occurs in the composition and

---

[2] The Pittsburgh Business Privilege Tax, Ordinance No. 675 of 1968, *as amended*, Pittsburgh Code Chapters 243.01 through 243.04 imposes a five mill per dollar tax on the gross annual receipts of any person engaged in business in Pittsburgh.

[3] Section 2(4) of The Local Tax Enabling Act reads, in pertinent part:

> [L]ocal authorities shall not have authority by virtue of this act:
>
> . . . .
>
> (4) To levy, assess and collect a tax on goods and articles manufactured in such political subdivision . . . or on any privilege, act or transaction related to the business of manufacturing. . . .

character of the materials utilized by the petitioner in producing the end result for which she is paid. We believe that a new, different and useful article emerges from the application of labor and skill of the petitioner and that the illustrations are manufactured articles.

In the City's appeal to this Court, the sole issue presented for our review is whether the trial court erred as a matter of law in holding that commercial illustration constitutes manufacturing within the meaning of The Local Tax Enabling Act's prohibition against such taxation.

Where, as here, a statute fails to define the term "manufacturing," the question of whether a specific activity is encompassed by the term, is a question of law to be resolved by the court pursuant to the facts of the case. *City of Reading v. Forty-five Noble Street, Inc.*, 50 Pa. Commonwealth Ct. 431, 413 A.2d 1153 (1980). In making this decision the courts have reviewed the term "manufacturing" narrowly. *Kirks Milk Products, Inc. v. Commonwealth,* 58 Pa. Commonwealth Ct. 230, 427 A.2d 688 (1981). Generally

"[m]anufacturing" as used in a legislative enactment is given its ordinary and general meaning. It consists in the application of labor or skill to material whereby the original article is changed into a new, different and useful article: Commonwealth v. Weiland Packing Company, 292 Pa. 447, 449, 141 A. 148 (1928); Pittsburgh v. Electric Welding Company, 394 Pa. 60, 145 A.2d 528 (1958). Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged: General Foods Corp. v. Pittsburgh, 383 Pa. 244, 118 A.2d 572

(1955). If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is not a new article or new production. (Footnote omitted.)

*Golden Triangle Broadcasting, Inc. v. City of Pittsburgh,* 483 Pa. 525, 529, 397 A.2d 1147 (1979) (quoting *Commonwealth v. Deitch Co.,* 449 Pa. 88, 93-94, 295 A.2d 834, 837 (1972)). Because of the emphasis which must be placed on the "ordinary and general meaning" of the term "manufacturing," not all activities which might otherwise qualify as "manufacturing" under this standard will be deemed manufacturing by the courts. For example

[c]onstructing a building is creating a new and different article which has a distinctive name, character and use. It thus fits into the definition of manufacturing which is frequently used by the courts, but it is not considered manufacturing because in its ordinary and general sense the word "manufacturing" is not applied to the construction of a building.

*Hazen Engineering Co. v. Pittsburgh,* 189 Pa. Superior Ct. 531, 541, 151 A.2d 855, 859 (1959). Thus, someone whose work product is primarily intellectual or clerical in nature, such as an engineer or architect who prepares blueprints, or an attorney preparing a brief or a judge authoring an opinion, is not considered to be engaged in "manufacturing." *Id.*

This Court believes it is this last category of activities into which Appellee's activities as a commercial illustrator best fall. Her work, illustrations of a singular and readily identifiable nature, is essentially the product of her own intellect and creativity. Aspects of it which she most strongly advocates as demonstrating that she is engaged in "manufacturing," *i.e.,* the conversion of ink and paper into a com-

pleted work of art, the reduction of the work to a size suitable to the client by use of the lucidograph machine, and so on, can really only be considered as ancillary to the process, just as typing and printing are to the publication of this opinion. It is the intellectual and creative aspects of Appellee's activities which are dominant and, consistent with the generally accepted use of the term "manufacturing," we must reject the trial court's holding that Appellee's activities qualify her for an exemption from the City of Pittsburgh's Business Privilege Tax. Accordingly, the decision of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion.

ORDER

Now, May 12, 1983, the decision and order of the Court of Common Pleas of Allegheny County in the above captioned matter, dated December 24, 1979, S.A. 480 of 1979, is hereby reversed and the matter is remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.