520 A.2d 904

The Kimberton Company, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

The Kimberton Company, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued November 19, 1986, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Joseph C. Bright, Jr., Drinker, Biddle* & *Reath,* for petitioner.

*Bartholomew J. DeLuca, Jr.,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE DOYLE, February 2, 1987:

The Kimberton Company (Kimberton) appeals from two orders of the Board of Finance and Revenue (Board) which determined that Kimberton was not entitled to claim the "manufacturing exemption" from the Capital Stock Tax appearing in Section 602(a) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7602(a) (Code).[1]

---

[1] Section 602(a) of the Code which provides for the payment of the capital stock tax, also states in pertinent part:

[E]xcept for the imposition of the seventy-five dollar ($75.00) minimum tax, the provisions of this section shall not apply to the taxation of capital stock of entities organized for manufacturing. . . .

We adopt the parties' stipulations. Kimberton is engaged in the business of producing and selling custom embroidery on sports shirts and similar items of sportswear, primarily topwear. Generally, Kimberton does not sell *un*embroidered garments except on occasion when a regular pro-shop customer will request unembroidered garments to fill out its order with the same quality garments as the embroidered ones it has purchased. Kimberton does not manufacture unembroidered topwear. Instead, its business involves receiving customer orders for insignia designs which are usually provided by the customers. These designs are then sent to Kimberton's art department which produces an art card. This card, subsequent to customer approval, is sent to an outside producer of Jacquard pattern tapes. These tapes consist of a series of instructions to an automatic sewing machine coded in the form of punched holes on a stiff cardboard tape approximately four inches in width. Each row of these punched holes dictates the exact position of the material beneath each sewing head which is needed to produce a single stitch. The average insignia requires three thousand stitches.

Kimberton currently has twenty-nine embroidery machines which sew on the insignias, each machine consisting of a tape reading and control mechanism, a series of sewing heads, (most of the machines have twelve heads) and a "panagraph" for each head. A panagraph is a rigid metal frame which holds beneath the sewing head a round hoop to which a garment is at-

---

Kimberton also argues that its activities constitute "processing" as that term is defined in Section 601 of the Code, 72 P.S. §7601. Our review of the definition of processing reveals that Kimberton's activities could not possibly fall within any of the various activities described therein nor has Kimberton explained how they could. We thus consider this argument to be totally without merit and will give it "shirt shrift."

tached. The panagraph moves in response to the Jacquard pattern tape's instructions. A needle in each sewing machine head, in coordination with a bobbin, supplies thread to embroider the pattern. Mechanical repairs to the machines and threading of the machines are performed by Kimberton employees.

Subsequent to the completion of the embroidering procedure the garments are removed, "jump stitches are cut,"[2] and the garments are inspected, ironed, folded and pinned before being boxed and shipped to customers most of whom consist of golf and tennis club professional shops. Kimberton's insignias are embroidered directly onto the garment itself and once embroidered cannot, as a practical matter, be removed without cutting or marking the garment. Additionally it is physically impossible to sell an embroidered insignia unless it is placed on something. Kimberton's embroidered garments sell for more than the same garments unembroidered because of the high quality of Kimberton's work and because of the special attraction the insignia has for a particular retail customer.

Kimberton argued before the Board and continues to maintain before this Court that the above described activity constitutes manufacturing and hence that it is entitled to the exemption appearing in Section 602(a) of the Code. In *Kirk's Milk Products v. Commonwealth,* 58 Pa. Commonwealth Ct. 230, 427 A.2d 688, 690 (1981) President Judge CRUMLISH, considering the definition of manufacturing under Section 602(a), reiterated what our state supreme court said in *Commonwealth v. Weiland Packing Co.,* 292 Pa. 447, 450-51, 141 A. 148, 149 (1928):

---

[2] Jump strokes are "the strokes the machine must make because the thread is continuous but which are not part of the insignia." Stipulation of Fact 38.

> [T]he process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges. If however there is merely a superficial change in the original materials or substances and no substantial and well signalized transformation in form, qualities and adaptability in use, quite different from the originals, it cannot properly and with reason be held that a new article or object has emerged—a new production been created.

Thus, for purposes of the statutory exemption one comes within the definition of manufacturing if by his skill, science and labor he produces a new product which is different in form, quality and adaptability in use.

Kimberton argues first that the product that it manufactures is custom embroidery which only incidentally is placed on sportswear. It thus asserts that by the application of skill, science and labor it turns threads into the finished insignias creating a new and different product. It analogizes its situation to those where piece goods are, by the application of skill and labor, turned into items of clothing. Such activity has, for purposes of tax exemption under different statutes, been held to constitute manufacturing. *See e.g., Philadelphia School District v. Rosenberg,* 402 Pa. 365, 167 A.2d 259 (1961) (manufacturing exemption applied under the Act of May 23, 1949 P.L. 1669, *as amended,* a tax whose purpose was to provide revenue for school districts of the first class); *Arrowhead Sportswear Corp. v. Philadelphia School District,* 22 Pa. D. & C.2d 134 (1960) (manufacturing exemption applied under the same Act as was at issue in *Rosenberg*).

Assuming without deciding that the item Kimberton produces is the embroidered insignia in and of itself,

that item does not qualify for an exemption under the definition of manufacturing enunciated in *Weiland* and *Kirk's Milk* because, as has been stipulated, the insignia cannot exist without the underlying garment and hence Kimberton's activity does not produce a "product" at all.

Kimberton argues in the alternative that it is a manufacturer of embroidered garments. Under this theory it is clear that the finished product, *i.e.,* the embroidered garment, has an independent existence. But, the product still fails to meet the *Weiland/Kirk's Milk* criteria because the product created (embroidered shirts) is not different than the product with which it began (unembroidered shirts) in form, quality and adaptability in use. It is well settled that a mere superficial or cosmetic change in an existing product is insufficient to constitute manufacturing. *Bindex Corp. v. City of Pittsburgh,* 504 Pa. 584, 475 A.2d 1320 (1984). In our view the instant case is merely one of many where the purported manufacturer ends up with essentially the same product with which he began. *See e.g. Weiland,* (ham which was cured and smoked still ham); *Commonwealth v. Tetley Tea Co., Inc.,* 421 Pa. 614, 220 A.2d 832 (1966) (tea which was separated, blended and placed in filtered bags still tea); *Commonwealth v. Deitch Co.,* 449 Pa. 88, 295 A.2d 834 (1972) (scrap metal which was cleaned, grated and classified still scrap metal). In the instant case what begins as a shirt (admittedly without decoration) ends as a shirt (admittedly with decoration). The finished product is altered only superficially in appearance and not at all in use. It is still worn in the same manner and still provides the same protection against the elements. We thus fail to see how the product is new and different.

Kimberton also argues that there is no actual difference between its activities and those of other taxpayers who have been granted the exemption and hence that

denying it the exemption violates the constitutional mandates of taxing uniformity, equal protection, and due process. The uncomplicated answer to this is that in other cases cited by Kimberton the exemption was granted because it was determined that the activity in question *was manufacturing*. Hence, there is a rational basis for denying Kimberton the exemption which had been granted to others and no constitutional violation is present.

It was additionally stipulated by the parties that should the Board's decision be upheld Kimberton's tax liability for the year ending September 30, 1982 would be $31,029.00. The taxpayer has already paid $41,000.00 and, therefore, would be entitled to a refund of $9,971.00 plus interest. For the tax year ending September 30, 1983 it was stipulated that Kimberton's tax liability would be $16,068.00; it has already paid $62,577.00 and is thus entitled to a refund of $43,932.00 plus interest. We shall therefore direct entry of judgment in accordance with these stipulated facts.

## ORDER

NOW, February 2, 1987, based upon the stipulated figures cited in the foregoing opinion the Commonwealth is directed to refund to Kimberton the sum of $9,971.00 for the tax year ending September 30, 1982 and the sum of $43,932.00 for the tax year ending September 30, 1983 plus legal interest of six percent per annum. This order shall become final upon the passage of thirty days from the date of the entry of said order unless exceptions are filed. The Chief Clerk is directed to enter judgment as indicated herein.

Judge COLINS dissents.