**City of Reading v. J&S Sportswear Inc.**

*Peter F. Cianci* and *Jack A. Linton,* for plaintiff.
*Paul J. Datte,* for defendant.

EDENHARTER, *S.J.,* June 28, 1989 — Plaintiff, City of Reading, instituted this action for declaratory judgment against defendant, J&S Sportswear Inc., seeking a declaration that it could levy, assess, and collect its business privilege tax on the income of J&S derived from its activities related to production of apparel for women.

The issue is whether or not J&S is engaged in "manufacturing" and thereby exempt from taxation under the business privilege tax.

The pertinent facts are not in dispute, J&S is a Pennsylvania corporation engaged in activities related to production of apparel for women at its facility located at Ninth and Cotton Streets in the City of Reading. J&S employs approximately 30 individuals. The majority of the employees of J&S are sewing machine operators engaged in sewing garments and the remainder are engaged in operating fusing machines, pressing machines, ironing, shipping, and supervision.

The principal products produced by J&S are skirts and pants. J&S is provided with the material, as well as patterns and designs, from the entities with which it contracts. The materials and patterns are then forwarded to other entities for cutting. The cut material is then returned to J&S to be made into the final product.

The operation of J&S begins when the pre-cut material is "sew-barred." "Sew barring" consists of type matching and marking the pre-cut material so that fronts and backs of garments are properly matched. After the material is sew barred, portions of the material are fused. Fusing is thin material with glue on one side which is cut by J&S and used to attach one piece of cloth to another piece of cloth by a fusing machine which is operated by an employee of J&S. J&S has small and large fusing machines for this purpose. After portions of the material are fused, the material is then provided to the sewing machine operators, each of whom is responsible for a different aspect of the process.

The sewing machine operators use thread which has been purchased by J&S. Some machine operators are responsible for direct sewing of component parts of the garment. Other machine operators attach hanger loops, band fusing, seam binding, or waistband piping. Additionally, belt looping is cut and sewn into the garment for belt loops. Zippers are also attached to some of the garments. Stays, tags, and buttons are also attached to and made part of the garment. Some sewing machine operators operate button machines and are responsible for inserting button holes into the garment. Taffeta lining is also cut and sewn into the garment by the sewing machine operators. The combination of fusing and sewing the constituent materials result in the production of the final garment.

After the garment is sewn, it is ironed and pressed. Then it is bagged and labeled for shipping to the entity with which J&S has contracted.

The buttons, stays, tags, zippers, belt looping, waistband piping, seam binding, hangar loops, thread, band fusing, fusible, taffeta lining and related items are generally purchased by J&S for the

process, unless the entity with which J&S is contracting provides special buttons or parts which that contracting party desires to have incorporated into the garment. The sewing machines, fusing machines, irons, presses, and other machinery at the Ninth and Cotton Street location of J&S are either owned or leased by J&S. The employees who operate the machinery and are otherwise involved in the process are all employed by J&S.

A small and indeed insignificant part of the J&S operation involves producing garment samples which are designed, cut, and produced by J&S.

On December 3, 1975, plaintiff enacted its Business Privilege Tax Ordinance under and pursuant to The Local Tax Enabling Act, 53 P.S. §§6901 et seq. (1965), as amended. Section 6902 (4) of this act provides:

"Such local authorities shall not have authority by virtue of this act:

(4) To levy, assess and collect a tax . . . on any privilege, act or transaction related to the business of *manufacturing*, the production, preparation or processing of minerals, timber and natural resources, or farm products, by *manufacturers*, by producers and by farmers with respect to the goods, articles and *products of their own manufacture*, production or growth . . ." (emphasis supplied)

Consistent with said provision an exemption is contained in the ordinance "on goods, articles, and products or on by-products of manufacture. . ." Ordinance §III.C.(5). J&S maintains that it is engaged in manufacturing and exempt from the business privilege tax. Neither the act nor the ordinance, however, defines "manufacturing." We must determine whether J&S is engaged in "manufacturing" thereby rendering J&S exempt from the business privilege tax. *City of Pittsburgh v. Tucker,*

74 Pa. Commw. 290, 459 A.2d 1333, aff'd 504 Pa. 580, 475 A.2d 1318 (1983).

"In determining what is manufacturing we must look not only to the definitions, but we must give consideration to the generally accepted use of the word." *Hazen Engineering Co. v. Pittsburgh*, 189 Pa. Super. 529, 151 A.2d 855 (1959). In *Bindex Corp. v. City of Pittsburgh*, 504 Pa. 584, 475 A.2d 1320 (1984), the court held that a book bindery qualified for the manufacturing exemption. The court stated that the term "manufacturing" as used in the exemption provision, means the transformation of material or things into something different from that received. The difference cannot be a superficial change that does not alter or change the things. The essential requirement is that the basic materials or goods be given a new identity by the current producer. The identity must be the product of skill and labor and must be easily traced to the producer.

J&S receives cut raw fabric. It sews bars, fuses, and sews the fabric, inserts zippers, buttons, belt loops, and other materials, finally presses the garment, and eventually produces the final product consisting of an article of clothing. Through the skill and labor of its employees, J&S takes essentially raw materials and processes those materials into that which was intended to be the product, namely a garment. The items which J&S initially receives consist of cloth and other materials. The final product does not resemble the original constituent materials.

In *Norris Brothers v. Commonwealth*, 27 Pa. 494 (1856), the court stated:

"But what is manufacturing? It is making. To make in the mechanical sense does not signify to create out of nothing; for that surpasses all human

power. It does not often mean the production of a new article out of materials entirely raw. It generally consists in giving new shapes, new qualities, or new combinations to matter which has already gone through some other artificial process."

Plaintiff cites *Philadelphia School District v. Parent Metal Products Inc.,* 402 Pa. 361, 167 A.2d 257 (1961) in support of its position. However, in *Parent Metal* each of the component parts was manufactured specifically for Parent Metal by subcontractors who provided the parts to Parent Metal. The court correctly identified the operation as producing "a product transformed from prefabricated units into an assembled whole." In J&S, the component parts utilized are not "prefabricated."

In the companion case to *Parent Metal, Philadelphia School District v. Rosenberg,* 402 Pa. 365, 167 A.2d 259 (1961), the court determined the operation to be manufacturing. The facts in *Rosenberg* were summarized by the court as follows:

"The appellee is in the business of selling men's clothing at wholesale prices. The record sustains the following facts: Appellee buys woolen piece goods, bindings, edgings, linings, buttons and trimmings which are fit for the making of men's suits and sport coats. These goods and items are all manufactured by others. After examining and determining the suitability of the woolens for men's garments, appellee sends the cloth that is satisfactory to an independent contractor for sponging, the usual practice in the garment industry. Upon its return, he arranges the cloth so as to eliminate shadows and mismatching. He designs the patterns for the garments, cuts the cloth to confirm thereto and eliminates defects which would prevent the sale of the completed garment. He assembles the cut-to-pattern materials and marks them as to size

and model. Then each of the coats consisting of over one hundred pieces and each of the trousers consisting of about sixty pieces are sent to two independent contractors to be sewn together by machine. The appellee exercises constant, close supervision over the sewing process. The plant wherein the coats are sewn together, and which is used exclusively for the appellee's business is owned by the individual appellee and his brother, as a joint enterprise. The completed garments are returned to him for distribution and sale."

In *Rosenberg* the pieces were cut by Rosenberg and sent with the other constituent materials to an independent contractor to be sewn. In holding that the said activities to be manufacturing, the court recognized that "[t]he fact that the goods are sewn together by others is not, in itself, determinative of the issue. One or more persons can be engaged in the manufacturing of the same, single article."

Plaintiff maintains that J&S is engaged in "assembling" and not exempt from the tax.

The evidence establishes that J&S does more than put together or assemble pieces which have been pre-designed and cut as with an erector set or a bicycle from Sears. J&S takes materials and transforms them into a garment which is then ready to function in a particular manner. Plaintiff urges that *Parent Metal* and *Kimberton Co. v. Commonwealth,* 130 Pa. Commw. 408, 520 A.2d 904 (1987) (embroidery insignia on sportswear) should control. Defendant however relies upon *Bindex* and *Rosenberg.* In addition, defendant cites *Williamsport v. Sun-Gazette,* 123 Pa. Commw. 335, 553 A.2d 525 (1989).

In the resolution of the issue we go to ancient and present definitions of the term "manufacturing." As already indicated, it generally consists in giving new

shapes, new qualities, or new combinations to matter which has already gone through some other artificial process. And whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities, and adaptability in use from the original material, so that a new article or creation has emerged.

Plaintiff contends that J&S does not design and cut the material from the pattern. However, we do not perceive this function to exclude J&S as engaged in manufacturing. J&S applies its own essential and different materials necessitating distinct work skills so that a new article or creation emerges.

We find as a fact that J&S at all times relevant herein has been and is engaged in "manufacturing," and conclude as a matter of law that J&S is exempt from taxation under the business privilege tax.

### DECREE NISI

And now, June 28, 1989, it is ordered and decreed in this action for declaratory judgment that defendant J&S Sportswear Inc., at all times relevant herein, has been and is engaged in "manufacturing," and that J&S Sportswear Inc. is exempt from the business privilege tax of plaintiff, City of Reading.

In the event that post-trial motions are not filed within 10 days after notice of this adjudication and decree nisi, the prothonotary shall upon praecipe of a party enter this decree nisi as the final decree.

### OPINION

EDENHARTER, *S.J.*, November 15, 1989 — Plaintiff, City of Reading, instituted this action for declaratory judgment against defendant, J&S

Sportswear Inc., seeking a declaration that it could levy, assess, and collect its business privilege tax on the income of J&S derived from its activities related to production of apparel for women. The issue is whether or not J&S is engaged in "manufacturing" and thereby exempt from taxation under the business privilege tax.

On June 28, 1989 the court entered an adjudication and decree nisi wherein it was held that J&S is engaged in "manufacturing," and is exempt from the business privilege tax of plaintiff. Plaintiff filed a motion for post-trial relief in the nature of a motion to direct the entry of judgment in favor of plaintiff. The basic issue is whether or not J&S is engaged in "manufacturing." Plaintiff urges that J&S is engaged in "assembling" garments.

Upon review of the record and after argument held we conclude that J&S is engaged in "manufacturing" for the reasons set forth in the adjudication which is incorporated herein by reference and made a part hereof.

Plaintiff's motion for post-trial relief should be dismissed; and the decree nisi entered as the final decree.

## ORDER

And now, November 15, 1989, upon consideration of plaintiff's motion for post-trial relief, and after argument held thereon, it is ordered that plaintiff's motion for post-trial relief be and hereby is dismissed; and it is further ordered that the decree nisi entered on June 28, 1989 be and hereby is entered as the final decree.