**TRISTAN ASSOCIATES, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 19, 2013.

Decided Aug. 6, 2013.

---

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY Judge LEADBETTER.

Taxpayer, Tristan Radiology Specialists, P.C.,[1] petitions for review of the order of the Board of Finance and Revenue (Board) denying Taxpayer's petition for refund of sales and use taxes ($61,845.44) paid on magnetic resonance imaging (MRI) and computed tomography (CT) machines, canned software associated therewith, and electricity to power such equipment during the period October 2006 through December 2008. The issue on appeal is whether these items are excluded from tax under the manufacturing exclusion set forth in the Tax Reform Code of 1971 (Tax Code).[2]

According to the parties' Stipulation of Facts, Taxpayer is engaged in the practice of medicine in the Susquehanna Valley and specializes in radiology. It provides diagnostic imaging, particularly MRIs and CTs (described as "services") to patients referred to it by other physicians. Either the patient or his/her health insurer pays Taxpayer for its services; Taxpayer does not charge or collect sales tax from the patient or insurer for the medical report ultimately provided by its radiologists or on the resulting images provided on film or compact disc when a copy of the image is provided to the patient or referring physician. The patient is considered the owner of the medical report and the film or compact disc.

Both the MRI and CT equipment image patients through a multi-step process fully described in the stipulations. Suffice it to

Lloyd R. Persun, Mechanicsburg, for petitioner.

Clinton G. Smith, Jr., Senior Deputy Attorney General, Harrisburg, for respondent.

1. Taxpayer is the "successor by assignment to Tristan Associates." *See* Stipulation of Facts.

2. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–10004.

say, the scanning/imaging process includes sending raw data to the hard drive on the equipment's computer; canned software on the hard drive is then used to read the data and allow a technician to manipulate the data to produce an image(s) on the computer monitor; when satisfied with the images, the technician uses canned software to transfer the images to a film printer or a compact disc printer to produce either a film or compact disc if the referring physician requires the captured images; the images are also transferred to a hard drive in Taxpayer's electronic archive.[3] The images transferred to film or compact disc are produced with a laser using a dry view process instead of the chemical developing process historically used to develop films and photographs. Taxpayer's radiologists access the images on the hard drive in the electronic archive, display them on the computer monitor, read them and prepare a written report analyzing the images. Two-thirds of the referring physicians using Taxpayer's services require film or a compact disc with the written report; the remainder of the physicians require only the report. Taxpayer can also produce scanned images on

film or compact disc at a later date from the electronic archive if requested.[4]

According to the Board, Taxpayer sought a refund contending that the purchase and installation of the imaging equipment constituted a permanent addition to the realty and, therefore, was a nontaxable construction activity. In the alternative, Taxpayer asserted that the equipment constituted photographic equipment, rendering the equipment, supplies and electricity nontaxable under the manufacturing exclusion. *See* Board's Opinion and Order attached to Taxpayer's appellate brief as Appendix I.[5] The Board disagreed, concluding: (1) the equipment remained tangible personal property upon installation, rendering the provisions applicable to construction activity inapplicable;[6] and (2) the equipment constituted medical diagnostic equipment, not photographic equipment, such that the manufacturing provisions were inapplicable.[7] Accordingly, the Board denied the petition for refund. This appeal followed.

■ In determining whether Taxpayer's imaging machines, software and electricity consumption is excluded from tax, we begin with the applicable statutory and regulatory provisions.[8] Section 202(a) of the

---

3. The Department of Revenue defines "canned software" as "[c]omputer software that does not qualify as custom software." 61 Pa.Code § 60.19(b). "Custom software" is then defined as "[c]omputer software designed, created and developed for and to the specifications of an original purchaser." *Id.*

4. The parties also stipulated that: "In considering the allowance or denial of the manufacturing exclusion for photography, the practice of the Department of Revenue is not to distinguish between photographers that use film and photographers that use digital imaging equipment or between those that deliver images by photograph and those that deliver images by disc." Stipulation of Facts, No. 48.

5. Taxpayer's petition for refund was initially denied by the Board of Appeals.

6. In this regard, the Board referenced 61 Pa.Code § 31.11 (pertaining to construction activities and items which become a permanent part of real estate).

7. In so holding, the Board cited 61 Pa.Code § 52.1(c) (providing generally that purchase of medical equipment remains subject to tax).

8. The manufacturing exclusion is strictly construed against the Department of Finance and Revenue because it is an exclusion, not an exemption. *M & M/Mars, Inc. v. Commonwealth*, 162 Pa.Cmwlth. 375, 639 A.2d 848, 852 (1994), *aff'd per curiam*, 540 Pa. 635, 658 A.2d 797 (1995).

Tax Code imposes a six percent tax on the "sale at retail" of "tangible personal property or services ... which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth...." 72 P.S. § 7202(a). "Sale at retail" includes any transfer, for a consideration, of the ownership, custody or possession of tangible personal property, which is defined in part as "[c]orporeal personal property including, but not limited to, goods, wares [and] merchandise...." Section 201(k)(1), (m), 72 P.S. § 7201(k)(1), (m).

Notably, a "sale at retail" does not include the "rendition of services or the transfer of tangible personal property including, but not limited to, machinery and equipment and parts therefor and supplies to be used or consumed by the purchaser directly in the operations of ... [t]he manufacture of tangible personal property." Section 201(k)(8)(ii)(A), 72 P.S. § 7201(k)(8)(ii)(A). "Manufacture" is defined by the Tax Code in part as:

> The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any tangible personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer, and shall include, but not be limited to—
>
> (1) Every operation commencing with the first production stage and ending with the completion of tangible personal property having the physical qualities (including packaging, if any, passing to the ultimate consumer) which it has when transferred by the manufacturer to another....

(2) The publishing of books, newspapers, magazines and other periodicals and printing.

Section 201(c)(1), 72 P.S. § 7201(c). The applicable administrative regulations define "manufacturing" as:

> The performance as a business of an integrated series of operations which places personal property in a form, composition or character different from that in which it was acquired whether for sale or use by the manufacturer. The change in form, composition or character shall result in a different product having a distinctive name, character and use. Operations such as compounding, fabricating or processing are illustrative of the types of operation which may result in a change although any operation which has that result may be manufacturing. Mere changes in chemical composition or slight changes in physical properties are not sufficient....

61 Pa.Code § 32.1. In addition, the regulatory exclusion for manufacturing specifically states: [9]

> *Equipment, machinery, parts and foundations therefor and supplies used directly in manufacturing or processing.* The purchase or use of tangible personal property or services performed thereon by a person engaged in the business of manufacturing or processing is exempt from tax if the property is predominantly used directly by him in manufacturing or processing operations....
>
> ....
>
> [*Property directly used; General* ]. Machinery, equipment, parts and foundations therefor, and supplies which are used in the actual production or to transport, convey, handle or store the

9. While the Administrative Code labels this provision an "exemption," that label is not dispositive.

product from the first production operation to the time the product is packaged for the ultimate consumer are considered to be directly used in manufacturing-processing operations.

*Id.*, Section 32.32(a).

Apart from these general provisions applicable to manufacturing, specific administrative regulations pertaining to particular businesses, professions or types of personal property are particularly relevant. The Administrative Code provides that while services rendered by "learned professions" are not subject to tax, such professionals must pay tax on the personal property and services used in their businesses. Specifically, Chapter 31 of Title 61 of the Administrative Code provides:

> *Application of tax.* Under the [Tax Code], taxable services include services constituting a "sale at retail," and services made taxable because of the broad definition of "purchase price" contained in the [Tax Code]. See section 201(g) and (k)(4) of the [Tax Code] (72 P.S. § 7201(g) and (k)(4)). See also §§ 31.1—31.3, 31.5 and 33.2. Persons rendering nontaxable services are consumers of the taxable personal property and services used in their business, and shall pay tax upon their purchase or use thereof. Following are examples of services upon which the person rendering the service does not collect tax but is liable for payment of tax on the purchase of taxable personal property and services used in the person's business:
>
>> (1) Services rendered by the learned professions.
>>
>> (2) Barber-beautician services. [ ]
>>
>> (3) Funeral director services.
>>
>> (4) Stenographic services. . . .

61 Pa.Code § 31.6 (entitled "Persons rendering nontaxable services").[10]

Finally, specific regulatory provisions apply to purchases of medical equipment and supplies. The Administrative Code provides, in part, as follows:

> (a) *General.* This section is intended to clarify the extent to which the sale or use of drugs, medicines, medical supplies, medical equipment and prosthetic or therapeutic devices is subject to tax. The determination that purchases qualify for exemption as medicines, medical supplies and the like, is based essentially upon the use for which the purchases are intended rather than upon the occupation of the purchaser.
>
> (b) *Exempt purchases.* The following constitute exempt purchases:
>
> (1) *Medicines and drugs.* The sale at retail or use of prescription or nonprescription medicines and drugs.
>
> (2) *Medical supplies.* The sale at retail or use of tangible personal property for use in alleviation or treatment of injury, illness, disease or incapacity, and which is consumed during the use.
>
>> . . . .
>
> (4) *Therapeutic or prosthetic devices.* Therapeutic or prosthetic devices designed for the use of a particular individual to correct or alleviate a physical incapacity.
>
>> . . . .
>
> (c) *Taxable purchases.* The sale at retail or use of medical equipment remains subject to tax, unless the equipment qualifies as an exempt therapeutic or prosthetic device under subsection (b). . . .

61 Pa.Code § 52.1.

■ On appeal, Taxpayer contends that the subject equipment's image-making process constitutes "other operations" as

---

**10.** The Administrative Code does not define "learned professions."

that phrase is used in the Tax Code's definition of "manufacture."[11] It further contends that the imaging process produces a change in the form, composition or character of tangible personal property purchased by the facility for use in producing MRI and CT images. Taxpayer notes that when the captured image is stored on the hard drive of the computer, or transferred to film or a compact disc, the operations have effected a change in the form, composition or character of the hard drive, film or disc, all tangible personal property purchased for use in the imaging operations. Taxpayer equates this to the process used to produce a photograph from an image captured on film.[12] Taxpayer does not argue, however, that it is a "photographer" as that term is defined in the regulations.[13]

In support of the application of the manufacturing exclusion, Taxpayer cites, *inter alia, Commonwealth v. Sitkin's Junk Co., Inc.,* 412 Pa. 132, 194 A.2d 199 (1963) (holding that the taxpayer's activities of sorting, cutting and baling scrap metal into a different form constituted "other operations" for purposes of manufacturing ex-

clusion such that equipment used was nontaxable), and *Commonwealth v. Olan Mills, Inc. of Ohio,* 456 Pa. 78, 317 A.2d 592 (1974) (holding that cameras and film used in making custom made portraits were used in the manufacture of personal property for purposes of exclusion from tax). In *Sitkin's Junk,* our Supreme Court stated, in pertinent part:

> By specifically defining "manufacture," the legislature indicated its intent that "manufacture" be construed in accordance with the statutory language and that the construction of such word was not to be controlled by prior judicial construction of such word under prior tax statutes.....
>
> .... Considering all the language contained in the statutory definition of "manufacture," we are convinced that prior judicial authority is not controlling in the definition of that word under this Act.
>
> .... To constitute "manufacture," first, the type of the activity must fall into one or more categories, i.e. "manufacturing, fabricating, compounding, processing or other operations" and second, as a result

---

11. Lehigh Valley Imaging Center, an *amicus curiae,* raises arguments that are very similar to Taxpayer's.

12. Taxpayer notes that in *Northeastern Pennsylvania Imaging Center v. Commonwealth,* 613 Pa. 560, 577, 35 A.3d 752, 762 (2011), our Supreme Court observed that while MRI machines are big, bulky and complex, they are nothing more than cameras, "just devices that take pictures, the evolution ... of the x-ray machine." In *Northeastern,* the Court considered whether MRI equipment, once installed, became a part of the real estate such that it was subject to a use tax paid by the seller or contractor. The Court ultimately concluded that the equipment remained tangible personal property after installation and was, therefore, subject to sales tax. Neither the manufacturing exclusion nor the other regulatory provisions mentioned above were considered.

13. "Photographers" are defined as: "A person engaged in the business of performing the total photography operation of picture taking, development of exposed film and the finishing and printing of pictures. The term also includes a person engaged in the business of performing a photography operation using microfilm, videotape, videocassettes or the like." 61 Pa.Code § 32.1. A photographer, considered a vendor of photographs, materials and services purchased by its customers, must collect tax on the purchase price charged for its photographs or services. 61 Pa.Code § 32.37(a). "The purchase or use of materials, equipment, and supplies by a photographer ... is exempt from tax if the property is predominantly used directly by him" in the photography operation. *Id.,* § 32.37(b) (relating to "manufacturing exemption").

of one or more types of the prescribed activities, the personal property must be placed "in a form, composition or character different from that in which such personal property was acquired. . . .

. . . . [T]he legislature intended that "other operations" include and embrace other types of activities not covered by the words "manufacturing, fabricating, compounding, processing."

An "operation" is an "action" or "activity" and is [t]he "action of making or producing something" [citing The Oxford English Dictionary].

412 Pa. at 138–39, 194 A.2d at 202–03 (citations, emphasis and footnote omitted).[14]

Relying on the above discussion in *Sitkin's Junk*, our Supreme Court concluded in *Olan Mills*[15] that equipment used in the process of making custom-made portraits was not taxable, stating:

An essential step [in the business of making or producing a custom-made portrait] is the "making or producing" of a negative from which the print (which ultimately becomes the finished portrait) is made. The making of the negative in turn involves a series of chemical reactions in the coating of the film, the first of which is caused by the in-camera exposure of the film to light, the "taking" of the picture. Also, when we consider the [r]esult of [taxpayer's] activity, we readily see that personal property is placed "in a form, composition or character different from that in which it is

acquired" by [taxpayer]. The sensitized paper, oil and water colors are changed into a portrait. The unexposed film, when developed, becomes the negative. In instances, the composition and character of the property is "different from that in which it is acquired."

It matters not, in our view, that . . . the exposure of the film results in a change in the composition or character of property which does not itself become an integral part of the finished portrait. The Act specifically defines "manufacture" as "the performance of . . . operations, engaged in as a business, which place [a]ny personal property in a form, composition or character different from that in which it is acquired [w]hether for sale or use by the manufacturer." The making of the negative is an operation which is an essential part of [taxpayer's] business and involves a change in the composition or character of the film [f]or use by the manufacturer *in making the portrait.*

*Id.* at 82–83, 317 A.2d at 594.

Taxpayer further notes that the manufacturing exclusion is applicable even if the tangible property is produced for the taxpayer's own use rather than sold to a third party.

The Commonwealth argues in turn that Taxpayer is engaged in nontaxable professional services as detailed in 61 Pa.Code § 31.6, not manufacturing. The Commonwealth further contends that in order to be a manufacturer or engaged in manufacturing, raw materials must undergo a

---

14. The Court, in *Sitkin's Junk*, was addressing the manufacturing exclusion set forth in Section 2(j) of the former Selective Sales and Use Tax Act of 1956, Act of March 6, 1956, P.L. (1955) 1228, *as amended*, 72 P.S. § 3403–2 (repealed), a predecessor to the present Tax Code. From the statutory language quoted in *Sitkin's Junk*, the former Tax Act and the Tax Code are very similar in this regard.

15. In *Olan Mills*, the Court was determining taxability under The Tax Act of 1963 for Education, Act of May 29, 1963, P.L. 49, *as amended*, 72 P.S. §§ 3403–1—3403–605 (repealed by Section 280 of the Tax Code, 72 P.S. § 7280), the immediate predecessor to the Tax Code. Again, the manufacturing exclusion in the Tax Act of 1963 is very similar to that appearing in the Tax Code.

change in form, composition or character, resulting in a different product having a distinctive name. According to the Commonwealth, Taxpayer does not use raw materials; rather its staff uses "equipment and intellect to create property, much like a modern engineer would create blueprints, or a commercial illustrator would create an illustration." Brief at 10.[16]

Because we find the regulatory provisions to be controlling, we need not decide this case based upon an interpretation of the Tax Code's extremely broad definition of "manufacture," which is echoed in the administrative regulation defining "manufacturing." Certainly, the provision of professional services, such as the practice of medicine or law, has never been understood to constitute manufacturing, although the statutory definition makes no reference to this distinction.[17] Indeed, this definition is so broad that, if it were taken

16. In support, the Commonwealth relies in part on *Lancaster Laboratories v. Commonwealth*, 148 Pa.Cmwlth. 465, 611 A.2d 815 (1992), *aff'd per curiam*, 534 Pa. 392, 633 A.2d 588 (1993). In *Lancaster Labs*, the taxpayer provided scientific analysis, research and testing on product samples provided by its clients. In order to provide its services, the taxpayer purchased laboratory equipment, computers and related supplies. The equipment allowed the taxpayer to separate its clients' samples into component parts and measure and analyze those components. Upon completion of its analysis, the client was provided with a report containing the information requested.

The taxpayer sought a refund after a use tax was imposed on its equipment and supplies, contending, *inter alia*, that it qualified for the manufacturing exclusion because it changed every test sample's form, composition or character, which resulted in a product of information and knowledge. Lancaster further asserted that the statutory definition of "manufacture" did not specify that a manufacturer produce tangible personal property and, therefore, the corresponding regulation, which requires that the mandated change result in a different product, is contrary to legislative intent and invalid. This court disagreed, stating:

[A]lthough the regulatory requirement of a "different product" is not expressly stated in the statute, manufacturing under § 201(c) must include transformed property for sale or use by the manufacturer that is passed ultimately to the consumer or another manufacturer, which is necessarily a different product with a distinctive name, character and use. Because the components resulting from Lancaster's breakdown of client-provided samples are not sold to or used by Lancaster or its clients, consumers

or another manufacturer, [its] activities do not fall within the manufacturing exclusion of § 201(c) of the [Tax] Code.

611 A.2d at 817. Accordingly, the court concluded that the taxpayer, Lancaster, was not a manufacturer itself.

The court also rejected Lancaster's contention that the written report provided to its clients satisfied the requirement of transformed property for use by another manufacturer, analogous to the manufacturing process of transforming a photographic negative into a finished portrait. Noting that a portrait involves the transformation of unexposed film into a paper product containing enlarged and enhanced images of the subject preserved on the film after exposure, the court observed that Lancaster's written report was merely a description of the process and results obtained; the product, or written report, was not a successor product of the samples analyzed, nor was it derived from a "transformation" of the latter. *Id.*

17. In *City of Pittsburgh v. Tucker*, 74 Pa. Cmwlth. 290, 459 A.2d 1333 (1983), this court addressed whether a commercial illustrator's gross receipts were exempt from a local tax, which precluded the local tax authority from levying a business privilege tax on "manufacturing or acts or transactions related to the business [of manufacturing]." *Id.* at 1335 (internal quotations omitted). Noting that the ordinance did not define "manufacturing," this court held that the term must be given its ordinary and general meaning, which would exclude some activities, such as the construction of a building, which otherwise would fall within the general definition. In determining whether commercial illustration constituted manufacturing, the court employed the following common understanding of the term:

[Manufacturing] ... consists in the application of labor or skill to material whereby

literally as Taxpayer urges, virtually any business which saves data or images to a computer and then downloads them to some media—electronic or hard copy—for its own use or that of a client, could *arguably* qualify as manufacturing. Clearly, this would be an absurd result which the General Assembly could not have intended.

Accordingly, we look to the regulations to give more precision to our interpretation of the manufacturing exclusion, and thus our resolution of this case. Doing so, it is clear that Taxpayer's purchase and/or use of the items at issue is taxable under both 61 Pa.Code § 31.6 ("Persons rendering nontaxable services") and 61 Pa.Code § 52.1 ("Purchases of medicines, medical supplies, medical equipment, [etc.]").

Pursuant to Section 31.6, the learned professions, whose services are not taxable to their patients or clients, must pay tax on the personal property and services used in their businesses. While "learned professions" is left undefined in the regulations, Webster's Third New International

Dictionary 1286 (1993) defines the phrase as "one of the three professions, theology, law and medicine, traditionally associated with extensive learning or erudition" and more broadly as "any profession in the preparation for or practice of which academic learning is held to play an important part." Thus, as commonly understood, the learned professions include the practice of medicine. According to the parties' Stipulation of Facts, Taxpayer is engaged in the practice of medicine, specializing in radiology. Accordingly, when Taxpayer produces images of patients and downloads them onto film or discs, the equipment and supplies it uses are specifically taxable.

Application of Section 52.1 also renders the equipment subject to tax. Under that provision, medical equipment remains subject to tax unless it is a "[t]herapeutic or prosthetic device designed for the use of a particular individual to correct or alleviate a physical incapacity." Here, the equipment is clearly diagnostic, not therapeutic.

> the original article is changed into a new, different and useful article[.] Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged[.] If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities and adaptability in use, it is not a new article or new production.
>
> . . . .
>
> Thus, someone whose work product is primarily *intellectual or clerical* in nature, such as an engineer or architect who prepares blueprints, or an attorney preparing a brief or a judge authoring an opinion, is not considered to be engaged in "manufacturing."

*Id.* at 1335–36 (internal quotations and citations omitted). Accordingly, the court concluded:

> This Court believes it is this last category of activities into which [the taxpayer's] ac-

> tivities as a commercial illustrator best fall. Her work, illustrations of a singular and readily identifiable nature, is essentially the product of her own intellect and creativity. Aspects of it which she most strongly advocates as demonstrating that she is engaged in "manufacturing," *i.e.,* the conversion of ink and paper into a completed work of art, the reduction of the work to a size suitable to the client by use of the lucidograph machine, and so on, can really only be considered ancillary to the process, just as typing and printing are to the publication of this opinion. It is the intellectual and creative aspects of [the taxpayer's] activities which are dominant and, consistent with the generally accepted use of the term "manufacturing," we must reject the trial court's holding that [the] activities qualify her for an exemption from the City's . . . Business Privilege Tax.

*Id.* at 1336. While persuasive, this case is not controlling because it involved the interpretation of a tax statute which contained no definition of the term "manufacturing." *See Sitkin's Junk.*

Therefore, the imaging machines are taxable.

The order of the Board is affirmed.

## *ORDER*

AND NOW, this 6th day of August, 2013, the order of the Board of Finance and Revenue in the above captioned matter is hereby AFFIRMED. Unless exceptions are filed within 30 days of the entry of this order pursuant to Pa.R.A.P. 1571(i), this order shall become final.